WORTHINGTON, Respondent, v. FARMERS INSURANCE EX-
CHANGE, Appellant.

*No. 75–417. Argued March 30, 1977.—Decided May 3, 1977.*
(Also reported in 253 N. W. 2d 76.)

For the appellant there were briefs by *James P. O'Neill, Douglas J. Carroll* and *Arnold, Murray & O'Neill,* and oral argument by *James P. O'Neill,* all of Milwaukee.

For the respondent there was a brief by *Francis R. Croak, Robert L. Elliot* and *Cook & Franke, S. C.* and oral argument by *Francis R. Croak,* all of Milwaukee.

ROBERT W. HANSEN, J. Both as to the order directing arbitration and the order confirming the award of the arbitrator, we deal with the uninsured motorist clause in the insurance policy issued by this defendant to this plaintiff. This policy provides, as to claims of bodily injury by the insured involving the owner or operator of an uninsured motor vehicle, "either party, on written demand of the other, shall institute arbitration proceedings by serving upon the other a formal demand for arbitration." Under this policy provision, whether the insured is legally entitled to recover from the uninsured motorist becomes a matter to be decided, assuming proper demand is made, by arbitration and not by the judicial process.[1]

Defendant insurer contends that plaintiff's demand for arbitration in this case did not meet policy requirements as to filing[2] and as to time limits for instituting

[1] *See:* Widiss, *A Guide to Uninsured Motorist Coverage,* sec. 218, page 42 (1969). *See also:* 5 Am. Jur.2d, *Arbitration and Award,* secs. 92, 111, 112, 140.

[2] Appellant's Brief, page 26, quoting from special provision four of policy as follows: " 'Formal demand for arbitration shall be a demand filed in a court of competent jurisdiction in the county

arbitration proceedings.[3] This contention leads us directly to examine letters sent to plaintiff by defendant insurer's counsel, the company counsel on this appeal. Prior to the trial of the passengers' suit, the insurance company attorney wrote plaintiff's counsel that in his opinion "as a matter of law there can be no causal negligence on the part of Morey Worthington, Jr." During the trial of the passengers' suit and upon receipt of plaintiff's demand for arbitration of his claim under the policy provisions, insurer's counsel responded: "Insofar as the uninsured motorist claim of Morey Worthington is concerned, it would appear that this claim cannot be processed until we learn of the outcome of the captioned lawsuit. As you know, there are $10/20,000 limits on said policy and there are three additional potential claimants, namely, his parents and his wife."

On appeal, defendant insurer construes its response to plaintiff's demand for arbitration to be "a refusal to arbitrate as demanded."[4] We do not so construe it. What was rejected was not resort to arbitration, but reference to an arbitrator before consummation of the passengers' litigation. The emphasis in insurer's response as to the overall policy limits as to uninsured motorist claims, and the reference to there being "three additional potential claimants," relates not to arbitrating

and state of the residence of the party making such demand and service on the other party, or by certified letter against whom arbitration is demanded, with return receipt as evidence.' "

[3] *Id.* at 26, quoting from condition three of policy as follows: "'(3) no cause of action shall accrue to the insured unless *within one year from the date of accident. . .* (c) *the insured has formally instituted arbitration proceedings.'* "

[4] *Id.* at 15, the defendant stating in full: "Nor did respondent seek to enforce his right to arbitration under the terms of the policy or Chapter 298 when his letter requesting same was denied by appellant. Appellant informed respondent that his claim could not be processed until after the outcome of the trial. That was a refusal to arbitrate as demanded."

plaintiff's claim, but to arbitrating it before the company's liability to the passengers in plaintiff's car is established.

We find in the insurer's response no absolute refusal to arbitrate, but only a refusal to arbitrate until the extent of company liability to the passengers' claims had been established. The insurance company in effect agreed to arbitrate as evidenced by its response, but merely attached the condition that arbitration not be had until the extent of company liability to the passengers had been determined at trial. Accordingly, we find waiver here as to the policy provisions for filing and demand within one year, but it is a waiver, not by plaintiff, but by the defendant insurer as to these policy requirements.

Defendant insurer also claims that resort to arbitration by the plaintiff is barred due to plaintiff's failure to comply with provisions of ch. 298, Stats., termed "the exclusive means to enforce arbitration provisions."[5] Defendant relies on a recent decision of this court, the *Collicott Case*.[6] We there held, construing sec. 298.01, Stats., that: " 'By providing for a stay pending arbitration, the statute implicitly denies the validity of a provision that no action may be brought until arbitration has been had . . . .' "[7] In *Collicott* the insurer was held

---

[5] *Id.* at 13, the particular reference apparently to sec. 298.03, Stats., providing in pertinent part: "The party aggrieved by the alleged failure, neglect or refusal of another to perform under a written agreement for arbitration, may petition any court of record having jurisdiction of the parties or of the property for an order directing that such arbitration proceed as provided for in such agreement. . . ."

[6] *Collicott v. Economy Fire & Casualty Co.*, 68 Wis.2d 115, 120, 121, 227 N.W.2d 668 (1975).

[7] *Id.* at 120, quoting *Schramm v. Dotz*, 23 Wis.2d 678, 682, 127 N.W.2d 779 (1964).

to have waived its right to arbitration,[8] and we do not read it as barring waiver by the insurer here.

The court further held in *Collicott:* "It is, of course, possible to waive one's right to arbitration."[9] That is true as to waiving time of resort to arbitration as well as to resort to arbitration in lieu of litigating claims. In the case before us we find the defendant insurer seeking only, and securing, a delay in time as to arbitrating the dispute until the passengers' suit had been litigated. The sequence of events in this case followed exactly what the insurer insisted upon, delay in resort to arbitration until claims of passengers were determined.

The defendant's contention that plaintiff was required by secs. 298.02 or 298.03, Stats., to seek a stay or compel earlier resort to arbitration is rejected. Instead, we hold plaintiff was entitled to accede to defendant's contention or condition that arbitration await the outcome of the passengers' suit. If waiver is involved in such agreed-to delay, it is waiver by defendant of policy provisions and statutory requirements as to an earlier resort to arbitration by either or both of the parties here involved.

As to the argument that sec. 298.02, Stats., required plaintiff to seek a stay of action to permit arbitration, that section applies only to ". . . any suit or proceeding . . . brought upon any issue referable to arbitration under an agreement in writing for such arbitration. . . ." That would not describe the suit brought by the passengers for their damages, as they were not parties to the insurance policy agreement and its provision for

---

[8] *Id.* at 121.

[9] *Id.* at 121, citing *Schramm v. Dotz, supra,* n. 7. *See also: State ex rel. Carl v. Charles,* 71 Wis.2d 85, 90, 237 N.W.2d 29 (1976), this court there holding at 91: "Both parties have failed to comply with the provisions of ch. 298 and have therefore waived the right to arbitration."

arbitration. Similarly, it could not refer to the claim of plaintiff against defendant insurer because no action was brought or intended to be brought in regard to such claim by either party here.

As to the argument that, under sec. 298.03, Stats., plaintiff was required to petition a court of record for an order directing arbitration following receipt of defendant's request for delay in instituting resort to arbitration, that section applies to a party "aggrieved by the alleged failure, neglect or refusal of another to perform under a written agreement for arbitration." However, the response of the insurer was construed, and justifiably so, to be an expression of willingness to arbitrate—but only after the passengers' lawsuit was tried. Thus the plaintiff here, himself willing to accept the condition of delay in instituting arbitration proceedings, was not an "aggrieved party" within the meaning of the statute.

Even if he could be considered to be in such category, we would find equitable estoppel here applicable to prevent this insurer from benefiting from the situation it created. Equitable estoppel requires " '. . . action or nonaction on the part of the one against whom the estoppel as asserted which induces reliance thereon by another, either in the form of action or nonaction to his detriment.' "[10] The response of the insurer here, requesting plaintiff to defer resort to arbitration until the passengers' suit was resolved, was the required action.

[10] *Gabriel v. Gabriel,* 57 Wis.2d 424, 429, 204 N.W.2d 494 (1973), quoting *City of Milwaukee v. Milwaukee County,* 27 Wis.2d 53, 66, 133 N.W.2d 393 (1965). *See also: Estate of Helgert,* 29 Wis.2d 452, 460, 139 N.W.2d 81 (1966). As to the elements required for application of promissory estoppel, here also arguably applicable, *see, Clark Oil & Refining Corp. v. Leistikof,* 69 Wis.2d 226, 238, 230 N.W.2d 736 (1975).

Plaintiff's agreement to defer processing of his claim and await the outcome of the passengers' suit was an "induced reliance." And, if the consequence could be loss of the right to arbitration, that would certainly be "to his detriment." Either road—that of waiver or estoppel—here leads to an affirming of the trial court's order directing arbitration of the claim of this plaintiff against this defendant.

In affirming the trial court direction that plaintiff's claim against defendant go to arbitration, we take note of the particular reasons and rationale for the inclusion of the arbitration alternative as to claims of insured motorists against their insurance carrier arising from claims of such insureds against uninsured motorists. The requirement of an arbitration alternative is intended to alleviate a potential conflict of interest situation of the insurer. As one author has properly appraised the situation of the insurer:

"To recapitulate: when there is an issue over who was at fault in an automobile accident involving both an uninsured motorist and an injured person insured under an uninsured motorist endorsement, the insurance company is potentially a party on both sides of the litigation. On the one hand, the insurer is interested in proving that the uninsured motorist was not guilty of negligence in order to avoid liability under the uninsured motorist endorsement. On the other hand, the company is interested and/or obligated to prove that the insured was not negligent (and/or that the uninsured motorist was negligent) in order to protect the insured from liability under the cross-complaint and thereby avoid liability itself under the automobile liability coverage. In this type of situation the allocation of fault determines the liability of both parties, and that in turn resolves the insurance company's obligation under both the automobile liability policy *and* the uninsured motorist endorsement. The insurer's interests in the two claims are diametrically opposed. Consequently, absent some mitigating factor,

the insurer faces a substantial conflict of interest problem.''[11]

■

At the very least, there is an evident potential for conflict of interest in the dual role in which an insurance carrier is placed where there is an automobile liability policy with an uninsured motorist endorsement. In the case before us, in the passengers' suit for damages, it was the responsibility of the company to defend its insured, and, in so doing, it furthered its own interest in seeking the highest possible apportionment of negligence to the uninsured motorist. However, as to the claim of its insured against the company that his personal injuries were suffered due to negligence of the uninsured driver, the interest of the company is not served by maximizing the causal negligence of the uninsured motorist.[12] The Lord's Prayer says, "Lead us not into temptation." The inclusion of arbitration alternatives to litigating claims of insured motorists under uninsured motorist endorsements avoids temptation and lessens potentiality for conflict of interest disturbing or destroying a normal business relationship between insured and insurer.[13]

---

[11] Widiss, *A Guide to Uninsured Motorist Coverage,* at page 255 (1969). *Cf. Curren v. Verinis,* 29 Conn. Sup. 79, 271 A.2d 703, 704 (1970); *Allstate Ins. Co. v. Hunt,* 469 S.W.2d 151, 153 (Tex. Sup. Ct. 1971).

[12] Pretzel, *Uninsured Motorists,* pages 8 and 9 (1972).

[13] *Id.* at 8–9, stating: "When an insured seeks recovery under UM [uninsured motorist] coverage, his insurer's self-interest leads it to attack its own insured and defend the other motorist on the tort liability issues—a reversal of its usual position. For this reason, provisions for arbitration are usually found in the statute. It is reasoned that the informality of arbitration serves to maintain the best possible relationship between the two temporary antagonists and allow the resumption of a normal business relationship at the earliest possible moment."

As to actions filed by the insured against uninsured motorists, the defendant company recognized the special problems present in the uninsured motorist situation, by including in the contract the provision that:

"[N]o judgment obtained in any action filed by the insured against the owner or operator of an uninsured motor vehicle shall be binding or determinative as to whether the insured is legally entitled to recover damages or the amount thereof under this coverage, nor shall the same be a bar to, or introduced in evidence in, any subsequent proceeding brought for the purpose of making such determinations."

While this protects only the company and does not apply to the passengers' suit here brought, it recognizes the special problems presented by uninsured motorists' endorsements on liability policies.

Defendant insurer here would have us hold that the allocation of negligence in the passengers' suit was either res judicata or precluded by collateral estoppel. It is argued that, since plaintiff has had a full opportunity to litigate a particular issue, he cannot reasonably demand a second one. But it is exactly such second chance of which this insurer, itself a party defendant in the passengers' suit has assured itself by the non-res judicata provision included in the contract.

The sound public policy reason—involving potential for conflict of interest on its part—which led the insurer to take itself out are more persuasive than its reasons now given for leaving the insured bound and barred by the adjudication of negligence found in the passengers' suit. The trial court refused to hold that the prior allocation of negligence in the passengers' suit was either res judicata or precluded by collateral estoppel, holding that such result would be ". . . one set of rules under the contract that would be preferable to the insurance company, and another set of rules under the law of claim

of preclusion which would be unfavorable to the insured." The trial court added, ". . . since claim preclusion originates in equitable concepts, that is hardly equitable."

We agree with the trial court that the res judicata/ preclusion concept ought not be here applied, with the evident result of its application being an inequitable one, but base our refusal to so do on the insurance policy itself. The policy of insurance was drafted by and issued to this plaintiff by this defendant insurance carrier. This policy provided, with regard to uninsured motorist protection for its insured, that the insurance company was obligated to pay to the insured all sums which the uninsured motorist was legally liable to the insured for as damages arising out of the collision, provided that:

"(2) determination as to whether the insured is legally entitled to recover such damages, and if so entitled the amount thereof, shall be made *by agreement* between the insured and the Company *or*, in the event of disagreement *by arbitration*." [Emphasis supplied.]

Thus the clear preference is expressed for agreement or arbitration, rather than for litigation or accepting the outcome of the suit brought by the passengers against the insured and an uninsured motorist. That preference and the policy in which it is expressed here require affirmance. The order of the trial court confirming the award of the arbitrator in this case is affirmed.

*By the Court.*—Order affirmed.