MINNESOTA LICENSED PRACTICAL NURSES ASSOCIATION, Appellant,

v.

BEMIDJI CLINIC, LTD., Respondent.

No. C5-84-231.

Court of Appeals of Minnesota.

July 17, 1984.

Richard Sand, Coale, Reichert & Sand, St. Paul, for appellant.

Ralph T. Smith, Smith, Carpenter & Benshoof, P.A., Bemidji, for respondent.

Heard, considered, and decided by WOZNIAK, P.J., and SEDGWICK and LESLIE, JJ.

OPINION

WOZNIAK, Judge.

This appeal comes from the trial court's refusal to order Bemidji Clinic, Ltd. to pay back pay and immediately rehire Stella Nelson. Nelson's union appeals. We affirm.

FACTS

Stella Nelson is a Licensed Practical Nurse (LPN). She has been employed part-time by Bemidji Clinic. The terms of her employment are covered by a collective bargaining agreement. That agreement was amended in December of 1982 allowing the clinic greater freedom to fill vacancies without regard to seniority.

LPNs are generally assigned to a physician on an ongoing basis. According to the clinic, this is essential since the LPN must be familiar with the doctor's procedures, patients, and method of work. When the physician to whom the LPN is assigned is not at the clinic, the LPN is assigned to do other tasks in the clinic when they are available. The system worked well when there were a number of patients in the clinic. Recently, however, the patient count decreased and there were very few tasks for the LPNs to do when their doctors were not in the clinic.

Nelson had a part-time position with "outreach doctors" who are not regular doctors at the clinic. In February of 1982, the patient load temporarily dropped to the point where the clinic decided to cut the hours of the LPNs. Nelson was asked to take time off while full-time LPNs, some of whom had less seniority than Nelson, took over her duties. Nelson filed 18 grievances which the arbitrator summarized as:

The above employee [Nelson] was told to take time off when her outreach physicians were in. As another LPN with greater seniority was wanting to work. [sic] Proper procedure regarding

layoffs, in accordance with our contract, were [sic] not followed.

The arbitrator summarized her requested relief as:

To reinstate said LPN to her regular duties and pay her for days already taken at loss of pay by request of Bemidji Clinic.

Sometime after the grievances were filed, Nelson returned to her position with the outreach doctors.

The grievances were taken before an arbitrator who made an award on July 26, 1982. It partially sustained Nelson's grievances "to the extent as set out by the award." The award mandates:

In the event that a surplus of employees exists, the employer may layoff employees in accordance with the provisions of Article 19 and the Letter of Understanding. Such layoff shall be accomplished by laying off the LPN with the least number of hours of continuous service since the most recent date of employment, regardless of whether such LPN is full time or part time.

In the event the retention of a part time employee over a full time employee creates difficulties in assignment, part time LPN's, in descending seniority order, shall be given the opportunity to assume full time status.

In the event no part time LPN is willing to assume full time status and a demonstrated need for a full time employee exists, the Employer may layoff the least senior part time LPN and retain a junior full time LPN.

A year after the award, Nelson, through her union, sued the clinic for back pay and immediate placement as a full-time employee. She alleged that on four separate occasions full-time employment was available, but not offered to her: 1) full-time with Dr. O'Hanlon in March 1982; 2) full-time with Dr. Hatch in November 1982; 3) part-time with the Cass Lake Satellite Clinic in November 1982; and 4) full-time with Dr. Dicks in February 1983. The trial court determined that Nelson had no right to

back pay or immediate placement as a full-time employee.

## ISSUE

Did Nelson and her union show that she was entitled to either back pay or immediate placement in a full-time position?

## ANALYSIS

1. Nelson made a claim at the arbitration hearing for back pay. As the arbitrator noted, an element of the settlement requested was, "pay ... for days already taken at loss of pay by request of Bemidji Clinic." The issue of back pay was, therefore, before the arbitrator. The arbitrator granted the nurses relief "to the extent as set out by the award." The award, however, did not specifically award back pay to Nelson. Although Nelson argues that she seeks only to enforce unimplemented portions of the arbitrator's award, she is asking for relief impliedly refused in the award. She is, therefore, asking for a modification of the award.

■ The court's power to modify an arbitration award is purely statutory. *International Union of Elec. and Mach. Workers, Local 1140 v. Portec, Inc.*, 303 Minn. 341, 228 N.W.2d 239 (1975). In Minnesota:

Upon application made within 90 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

Minn.Stat. § 572.20(1) (1982).

■ The 90-day time limit for seeking a modification is to be strictly enforced. Here, Nelson waited nearly a year before filing her application for a modification of the award. The motion is untimely.

■ Back pay would nonetheless be required if the employer had failed to abide by the terms of the arbitration award. Nelson claims four instances where a position was available but not offered to her in violation of the award: 1) March 1982, full-time with Dr. O'Hanlon; 2) November 1982, full-time with Dr. Hatch; 3) November 1982, part-time with the Cass Lake Satellite Clinic; and 4) February 1983, full-time with Dr. Dicks.

Since the arbitrator's award was dated July 26, 1982, it was issued after the March 1982 opening with Dr. O'Hanlon. The award could not have applied to the March 1982 full-time position with Dr. O'Hanlon.

The November 1982 position with Dr. Hatch was offered to Nelson. She said she would take the position, but could not work all of the hours because of her school commitments. Wanting someone who could work all the given hours, the clinic hired another LPN. Foreseeing this type of situation when a part-time LPN is offered a full-time LPN's position, the arbitrator noted:

If a senior part time nurse seeks a position currently being held by a junior full time nurse, then she should be willing to accept all of the duties and responsibilities *and the hours* of the full time LPN whose job she wishes to acquire. *If the senior part time nurse is not willing to accept the hours, then that goes to the question of qualifications and availability,* in which case the *clinic is not required to fragment a full time job* in order to retain a senior part time nurse.

Since Nelson was not available for all the hours of the full-time position, under the award, the clinic was under no obligation to hire her.

The November 1982 position at the Cass Lake Clinic was for a registered nurse. Nelson is not an RN, but an LPN. She was not qualified for the Cass Lake position.

In December of 1982, the seniority section of the collective bargaining agreement had been amended. Under the amended collective bargaining agreement:

> If a vacancy occurs as a result of the termination of an employee, that vacancy may be filled in the discretion of the clinic by either hiring from outside of the bargaining unit or the clinic may offer the vacant position to a bargaining unit member. The process of filling vacancies provided by this Section will apply in circumstances where the force of physicians is increased.

The trial court determined that, by this agreement, "the Union waived its members' pre-existing seniority rights for filling vacancies." The section seems to give the clinic broad discretion to hire anyone they please when a vacancy occurs. They seem to have properly exercised that discretion by hiring an outside person for the February 1983 opening.

Nelson has not shown that she had any rights under the collective bargaining agreement as interpreted by the arbitrator to any of the positions she claimed should have been offered her. Thus, she is not entitled to back pay.

 2. Nelson argues, under the arbitrator's award, the clinic must immediately offer her full-time employment. The award did not specifically state that the clinic must immediately offer any employment to Nelson. Rather, the award set a procedure for handling layoffs of full- and part-time employees under the original seniority plan. Under that procedure, LPNs are to be laid off according to seniority only, without regard to full- or part-time status. In a situation where a part-time LPN would be in a position to "bump" a full-time LPN, the hospital is not obliged to allow the part-time LPN to bump the full-time LPN unless the part-time LPN is willing to take over all the full-time LPN's responsibilities and hours.

The arbitrator's award comes into play when an LPN is laid off. Although Nelson was asked to take some time off from her part-time job, after the award she was reinstated to that part-time job. She continues to work at that part-time job. Since she is working at her old job, she cannot claim she was laid off. Even if she were laid off, she would have to be willing to take all the duties and hours of the full-time LPN. However, when offered a full-time position, she could not take it because it conflicted with her school commitments. Nelson has not shown that she was laid off and that an employee with less seniority held a position which she was qualified for and able to fill.

## DECISION

Nelson and her union have not shown that she was entitled to either back pay or immediate placement in a full-time position.

Affirmed.