Brian PIERCE, Respondent,

v.

**MIDWEST FAMILY MUTUAL
INSURANCE COMPANY,**
Appellant.

No. C4–86–452.

Court of Appeals of Minnesota.

July 15, 1986.

Daniel J. Heuel, Muir, Heuel & Carlson,
P.A., Rochester, for respondent.

Michael W. McNee, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and FORSBERG, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant insurance company challenges a trial court judgment confirming an arbitration award and a subsequent judgment awarding respondent insured attorney fees. Appellant claims (1) the arbitration award should have been reduced by setting off a basic economic loss benefits payment, (2) it should have been permitted trial de novo pursuant to the terms of the involved policy, and (3) the trial court abused its discretion in awarding bad faith attorney fees. We affirm.

## FACTS

On June 12, 1982, respondent Brian Pierce was a passenger in a car owned and driven by Kevin Lee. En route from Rochester to Chatsfield on County Road 7, the car left the highway and struck a tree. Respondent sustained serious injuries.

Respondent settled with Lee's liability insurer, Dairyland Insurance Company (Dairyland), on December 1, 1982, releasing his claim for Lee's $25,000 policy limit. Respondent made his additional claims against his own insurer, appellant Midwest Family Mutual Insurance Company (Midwest). Midwest paid respondent basic economic loss benefits of $9783.50, including $4037.50 for lost income and $5746 for medical costs.

Pursuant to his policy with Midwest, respondent filed a written request on August 30, 1984 for arbitration regarding underinsured motorist benefits payable by Midwest. The involved policy states:

**ARBITRATION**

If we and a **covered person** do not agree:

1. Whether that person is legally entitled to recover damages under this endorsement; or
2. As to the amount of damages; either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:
1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the **covered person** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:
1. Whether the **covered person** is legally entitled to recover damages; and
2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of Minnesota. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

The arbitration hearing was held on August 14, 1985. On October 19, 1985, the arbitration panel issued its decision and awarded respondent $70,000 "in full settlement of all claims submitted to arbitration." The award was not itemized. One of the three arbitrators signed an accompanying memorandum stating the award was too high and in which he calculated medical expenses and referred to lost wages.

On October 21, 1985, respondent moved to confirm the arbitration award pursuant to Minn.Stat. § 572.18. Appellant Midwest sent respondent a check for $35,216.50 ($70,000 less $25,000 set-off for the Dairyland payment less $9783.50 set-off for the

Midwest payment of basic economic loss benefits) and a full release of Midwest for respondent to sign.

Respondent's motion was heard on November 20, 1985. At the hearing, appellant orally moved to modify the award to reflect a set-off for Midwest's $9783.50 payment. After the hearing, the parties agreed Midwest's check for $35,216.50 would be placed by respondent in an interest-bearing trust account and would not be distributed until the close of litigation.

On December 16, 1985, the trial court issued its findings, conclusions and order. Judgment was entered on December 17, 1985 confirming the arbitration award and denying appellant's motion to modify. A $45,000 judgment was subsequently docketed setting off respondent's $25,000 settlement with Dairyland against the $70,000 award.

On December 17, 1985, appellant Midwest wrote respondent and informed him of its demand for a trial de novo pursuant to the involved policy. Appellant also requested return of the $35,216.50 check. Respondent did not return the check which remains in trust.

On January 8, 1986, appellant moved for vacation of judgment pursuant to Minn.R. Civ.P. 60.02(6) based on its election of trial de novo. On January 10, 1986, respondent moved for bad faith attorney fees and costs pursuant to Minn.Stat. § 549.21.

On January 22, 1986, the trial court issued its findings, conclusions and order. Judgment was entered and docketed on January 24, 1986 denying appellant's motion and awarding respondent $800 in bad faith fees and costs.

Appeal is made from both trial court judgments by notice of appeal filed March 14, 1986. On April 11, 1986, respondent moved for damages, double costs and attorney fees pursuant to Minn.R.Civ.App.P. 127 and 138 and Minn.Stat. § 549.21. By order dated April 17, 1986, we deferred consideration of respondent's motion until consideration of this appeal on its merits.

## ISSUES

1. Is this appeal proper?

2. Did the trial court err in not setting off from the arbitration award basic economic loss benefits payment?

3. Did the trial court err in not giving effect to the policy clause providing for trial de novo?

4. Did the trial court abuse its discretion in awarding bad faith attorney fees?

5. Are bad faith fees and costs warranted on this appeal?

## ANALYSIS

■ 1. Notice of appeal states appeal is made from judgments entered on December 23, 1985 and January 25, 1986. Attached to the notice were judgments actually entered on December 17, 1985 and January 24, 1986. Those judgments were docketed on December 23 and January 24 respectively. Appeal periods begin to run from entry of judgment. *See* Minn.R.Civ. App.P. 104.01. Notice of appeal was not so insufficient as to be misleading. *See Pischke v. Kellen,* 384 N.W.2d 201, 203–04 (Minn.Ct.App.1986).

Respondent argues this appeal is flawed because appeal is made from the trial court's judgment and not its order confirming the arbitration award. He asserts appellant has thereby limited review to consideration of sufficiency of the evidence. Minn.Stat. § 572.26 provides appeal may be taken from either the order confirming the award or from the judgment. *See id.* subd. 1. Appeals are governed by general civil rules. *See id.* subd. 2. We review the order confirming the award as affecting the resultant judgment. Minn.R.Civ. App.P. 103.04.

■ Respondent claims review of the trial court's order denying appellant's rule 60.02 motion to vacate judgment cannot be made. He states, "No appeal may lie from an Order denying a Motion to vacate an authorized Judgment" and because the December 17 judgment was authorized, appeal challenging the trial de novo ruling is

improper. An order refusing to vacate an authorized judgment is reviewable on appeal from the judgment itself. *See Breslaw v. Breslaw,* 229 Minn. 371, 373, 39 N.W.2d 499, 500 (1949). Appeal has been made from the judgment. The order denying vacation may be considered.

2. Appellant claims the trial court erred in not modifying the arbitration award by deducting $9783.50 basic economic loss benefits paid by Midwest to respondent. Appellant claims respondent proved his medical and wage losses to the arbitrators as reflected in the memorandum accompanying the award, but the panel did not consider actual basic economic loss benefits paid to respondent. It asserts the parties had agreed set-offs would be subtracted from the unitemized award. The parties do not dispute Dairyland's $25,000 settlement payment should be deducted.

■ The trial court in denying modification concluded the set-off provision of Minn.Stat. § 65B.51 does apply to arbitration awards. Subdivision 1 of that statute states deduction is to be made from "any recovery." We agree. The issue thus becomes whether the arbitration panel did apply the set-off.

The trial court found the arbitrators did consider and apply set-off of basic economic loss benefits, stating:

This court finds that the arbitrators in the case at bar considered the issue of set-off and that the amount of their award reflects their decision on that issue. Minnesota Rule 2770.5200 C. states that in arbitration of automobile insurance disputes, "A finding as to the amount of damages in issue *shall be based upon the facts presented to the arbitrators."* Claimant's attorney submitted evidence of the losses for which Midwest seeks set-off. Therefore the arbitrators must have considered those losses as a category of damages. The award itself indicates that it is "in full settlement of all claims submitted to the arbitration." Moreover, Arbitrator Blanchard's dissenting Memorandum shows that the arbitrators were aware of

and considered the exact amounts of those losses—the same amounts which Midwest paid to Pierce in economic loss benefits.

\*    \*    \*    \*    \*    \*

Although there is some evidence that the parties may have agreed not to submit the issue of set-off to the arbitrators, it is clear that they actually presented evidence of the losses to be set off at the hearing. If the arbitrators had been aware of their agreement and intended to reserve the issue of set-off for later stipulation or judicial determination, at the very least this court would expect that understanding to be reduced to writing either in the award itself or in some other binding agreement. The arbitrators decided set-off as part of the merits of the dispute before them and this court may not disturb that decision. Midwest may not set off its previous economic loss benefit payments against the arbitrators' award.

(Emphasis in original).

■ We agree. The arbitration panel decided the matter as submitted to it. If an agreement between the parties was reached regarding subsequent reduction of the arbitration award, some record should have been made of the stipulation. The record reasonably indicates set-off was made by the arbitrators. The trial court did not err in confirming the award. *Cf. Minnesota Licensed Practical Nurses Assn. v. Bemidji Clinic, Ltd.,* 352 N.W.2d 65, 67 (Minn.Ct.App.1984) (award may be modified pursuant to Minn.Stat. § 572.20 when the "arbitrators have awarded upon a matter not submitted to them").

3. Appellant claims the trial de novo provision in its policy's arbitration clause is valid and enforceable. The clause states:

A decision agreed to by two of the arbitrators will be binding as to:

\*    \*    \*    \*    \*    \*

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial

responsibility law of Minnesota. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

Appellant asserts that provision, which may be enforced by either party, is part of a private agreement to arbitrate.

The trial court, in denying appellant's rule 60.02 motion to vacate judgment because of the trial de novo provision, concluded appellant had not made the exceptional showing required under rule 60.02(6) because the provision was void as against public policy and appellant was estopped by its motion to modify to demand trial de novo.

Regarding estoppel, the trial court stated appellant's duty to expedite litigation placed upon appellant the "responsibility to elect either a motion to modify the arbitrators' award or a trial de novo." The court found:

Respondent breached its duty when it engaged the court's authority to modify the arbitrators' award while reserving to itself all along the right to disregard the court's decision, retry the merits of the claim, and attempt to obtain a financially more favorable result. Despite Respondent's perfunctory mention of the trial de novo clause in the midst of extensive legal arguments on the merits, Respondent's Motion to Modify the arbitrators' award implicitly solicited the very judgment which Respondent now seeks to vacate. Under Minn.Stat. secs. 572.20 Subd. 2 and 572.21, whether the court grants or denies a motion to modify, it must enter judgment in conformity with its order and enforce it as it would any other judgment. Having participated fully in proceedings which necessarily would result in judgment, Respondent may not now obtain vacation of that judgment and force Claimant to bear the additional cost of further proceedings de novo.

■ Appellant argues it should not be estopped because it warned the trial court by memorandum prior to confirmation that the court's decision would be premature given the trial de novo 60–day provision. We disagree. By engaging the trial court in one fashion, appellant should not have the opportunity to restart procedures even if the court has not completed its analysis. Appellant's decision to enforce the trial de novo provision was untimely.

Although observing courts should be hesitant to find contractual provisions void as against public policy, the trial court also stated:

However, in the present case the legislature has clearly expressed in the Minnesota Arbitration Act its concern for the efficient resolution of claims. Moreover, the abuse of the judicial process and waste of judicial resources which a trial de novo clause of the type at issue here occasions obviously tends to undermine confidence in the impartiality of the administration of justice. Thus this court must conclude that the trial de novo clause is void as against public policy.

\* \* \* \* \* \*

The facts of the present case illustrate quite pointedly how the trial de novo clause violates recognized public policies favoring arbitration, judicial economy, and respect for the judicial system. The clause forces a party, on the demand of her opponent, to submit a dispute to arbitration, incurring the expense of arbitrators' and attorneys' fees. Then either party may move a court of competent jurisdiction to confirm or modify the arbitrators' award, occasioning further expenditure of the time and resources of the parties, as well as those of the court. If, after "two bites at the apple," a party is still not satisfied with the result, he may demand a trial de novo, disregarding the decisions of both the arbitrators and the court and starting again from the beginning. Thus the end result subverts rather than assists the ultimate purpose of an arbitration clause: the voluntary, speedy, informal and relatively

inexpensive resolution of disputes. Moreover, the party demanding a trial de novo casts disrepute and scorn upon the authority of the court to confirm and enforce the arbitrators' award, an authority clearly bestowed upon the court by the Arbitration Act.

Because we hold appellant was estopped from enforcing the trial de novo provision, we need not reach the issue whether that provision is void as against public policy.

4. Appellant challenges the trial court's award of bad faith attorney fees because it claims it was justified in attempting to enforce a valid contractual provision and exercising its rights under civil procedure rules. It asserts its actions were timely not giving rise to delay and good faith was demonstrated by tendering of the $35,216.50 check.

Respondent argues appellant's strategy was to "delay and stall at every stage of the proceedings." He also states appellant gave him the $35,216.50 check accompanied by, and conditioned on signing, a full release. Because a dispute regarding the settlement figure clearly existed, respondent argues appellant's transmittal of the check was inconsequential.

The trial court's broad discretion in awarding attorney fees under Minn.Stat. § 549.21 can be reversed only upon a showing of clear abuse of that discretion. *Strand v. Nelson,* 380 N.W.2d 906, 909 (Minn.Ct.App.1986). Here the trial court stated:

> As discussed above, [Appellant] brought the motion at bar under a contractual provision which is void and unenforceable merely for the purpose of delaying the resolution of the dispute for its financial benefit. It must have been aware of the waste of judicial and personal resources this motion to vacate the court's judgment would occasion. This awareness constitutes bad faith. Therefore this court can only conclude that an award of costs and attorneys fees is appropriate.

■ We cannot conclude the trial court abused its substantial discretion in making that finding based on the obvious untimeliness of appellant's motion and therefore affirm the trial court's award of attorney fees.

■ 5. Respondent seeks an additional award of attorney fees, costs and damages on appeal. He states appeal has been made from the judgment on the ninetieth day after entry and argues because appellant was assessed bad faith fees below it should have known further challenge would also be in bad faith.

Appeal should not be prohibited because of fees assessed by the trial court. Further, if filing an appeal on the last possible day constituted bad faith, numerous appellants would merit sanction. We deny respondent's motion.

### DECISION

The trial court properly confirmed the arbitration award and refused to vacate its subsequent judgment. The trial court did not abuse its discretion in awarding attorney fees. However, additional fees on appeal are denied.

Affirmed.