David SCHMIDT, Appellant,

v.

MIDWEST FAMILY MUTUAL
INSURANCE COMPANY,
Respondent.

No. C0–87–782.

Court of Appeals of Minnesota.

Oct. 6, 1987.
Review Granted Dec. 18, 1987.

Paul E. Grinnell, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for appellant.

Thomas Leo Garrity, Cahill & Maring, Moorhead, for respondent.

Heard, considered and decided by RANDALL, P.J., SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

David Schmidt appeals from an order denying his motion for confirmation of an arbitrators' award. The order was not con-

firmed because respondent Midwest Family Mutual exercised its right under the policy to demand a trial de novo following the arbitrators' decision. We reverse.

## FACTS

David Schmidt was injured in an automobile accident on September 15, 1983. Schmidt had uninsured motorist coverage under his policy with Midwest and made a claim under that provision.

From a letter in the file it appears the parties agreed to arbitrate the claim, although it was Schmidt who filed the demand for arbitration. A panel of three arbitrators awarded Schmidt $45,000. Schmidt later petitioned for and received his costs in the arbitration proceeding.

Schmidt's uninsured motorist endorsement included an arbitration clause which provided:

A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the covered person is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

Schmidt moved the trial court to confirm the arbitrators' award. *See* Minn.Stat. § 572.18 (1986). Midwest, however, had made a demand for trial de novo under the terms of the policy.

The trial court determined that the trial de novo provision and Midwest's demand prevented confirmation of the award, notwithstanding language in *Pierce v. Midwest Family Mutual Insurance Co.*, 390 N.W.2d 358 (Minn.Ct.App.1986), indicating such a clause may be void as against public policy.

## ISSUES

1. Is Schmidt's challenge to the trial de novo provision barred by principles of estoppel?

2. Did the trial court err in holding that the provision is not void as against public policy?

## ANALYSIS

### I

■ Midwest argues that Schmidt is estopped from challenging the trial de novo provision because he sought arbitration under the policy provision and has obtained an award from the arbitrators. We disagree.

Schmidt has not retained any benefit from the arbitration clause that is not immediately threatened by the trial de novo provision. *Cf. Larx Co., Inc. v. Nicol,* 224 Minn. 1, 27, 28 N.W.2d 705, 719 (1947) (party retaining the benefits of an agreement containing a restrictive covenant may be estopped from asserting its invalidity). While Schmidt may have obtained a binding determination of coverage, the parties do not indicate coverage was at issue. Even the benefits of the arbitration procedure would be nullified by trial de novo, with the consequent time and expense of litigation.

In *Lysholm v. Liberty Mutual Insurance Co.,* 404 N.W.2d 19, 21 (Minn.Ct.App. 1987), in which this court found estoppel, the insured went through arbitration, received an unfavorable result, and then sought trial (although the arbitration award did not fall under the trial de novo provision), claiming the trial de novo clause was void. Here, by contrast, there is no inconsistency in Schmidt's position; he claims the arbitrators' decision should be binding. The fact that Schmidt sought arbitration under the same policy clause that includes the trial de novo provision is not inconsistent with his current position. Rather, the right to trial de novo is itself in conflict with the right to binding arbitration. *See Lysholm,* 404 N.W.2d at 20 (trial de novo provision arguably frustrates policy favoring finality of arbitration awards).

## II

This court has twice alluded to the public policy arguments presented against trial de novo provisions. *See Lysholm*, 404 N.W.2d at 20; *Pierce*, 390 N.W.2d at 362–63. In both cases we did not reach the issue, because estoppel prevented the parties from raising it. Here the question is squarely presented by the facts, although we would have preferred addressing it on a fuller adversarial presentation of the legal issue.

■ Minnesota's public policy, manifested in the Uniform Arbitration Act, favors arbitration as an informal, speedy and inexpensive means of resolving disputes arising between contracting parties whose contract includes an arbitration clause. *Dunshee v. State Farm Mutual Automobile Insurance Co.*, 303 Minn. 473, 477, 228 N.W.2d 567, 570 (1975). The basic intent of the Uniform Arbitration Act is to discourage litigation. *Layne-Minnesota Co. v. Regents of University of Minnesota*, 266 Minn. 284, 288, 123 N.W.2d 371, 375 (1963). However, the alternative forum of arbitration is a forum created, controlled and administered by the written agreement. *Id.* As a general principle, the contracting parties are free to determine the scope and extent of their arbitration agreement. *See, e.g., Cloquet Education Association v. Independent School District No. 94*, 344 N.W.2d 416, 418 (Minn.1984) (arbitrability is determined by the intent of the parties as indicated by the language of the arbitration agreement); *see also Grover-Dimond Associates v. American Arbitration Association*, 297 Minn. 324, 326, 211 N.W.2d 787, 788 (1973) (parties may fashion whatever agreement they wish to limit the scope of arbitration proceedings).

In *Pierce*, 390 N.W.2d at 362–63, this court recognized the potential burdens placed on the judicial system by trial de novo provisions. We quoted extensively from the trial court's memorandum, which concluded that

the trial de novo clause violates recognized public policies favoring arbitration, judicial economy, and respect for the judicial system.

*Id.* As the trial court noted, the same party may initially demand arbitration and later demand trial de novo if dissatisfied with the arbitrators' award. *Id.* (Under principles of estoppel as applied in *Pierce*, however, a party may not both move to modify or vacate the arbitrators' award *and* seek trial de novo. *Cf. Pierce*, 390 N.W.2d at 362–63 (quoting trial memorandum)).

■ *Lysholm* presented yet a third argument against the trial de novo provision— the lack of mutuality in the remedy:

We recognize that the trial de novo clause in appellants' insurance policy raises serious policy considerations. Appellants argue that an insured objecting to an arbitration award as unreasonably low would have no opportunity to submit the issue to trial while an insurer objecting to an award as unreasonably high would have such recourse.

*Lysholm*, 404 N.W.2d at 20. Like the policy in *Lysholm*, the policy in this case provided that either party could demand trial de novo, but only on damage awards above the statutory minimum for bodily injury liability. *See* Minn.Stat. § 65B.49, subd. 3(1) (1982) ($25,000 minimum). That provision, however, skews the trial de novo remedy in favor of the insurer, which is more likely than the insured to be dissatisfied with an award above $25,000.[1] Conversely, the insured is more likely to be dissatisfied with an award below $25,000, which could not be tried de novo.

The Ohio Supreme Court has declined to allow the insurer to take advantage of a trial de novo provision for which the parties had not specifically bargained. *Nationwide Mutual Insurance Co. v. Marsh*, 15 Ohio St.3d 107, 472 N.E.2d 1061, 1062 (1984). Recognizing that insurance contracts are contracts of adhesion, the Iowa Supreme Court has held the insurer may

---

1. The arbitrators' award would be limited to the insured's coverage under the policy. The statutory minimum coverage for uninsured motor-ists was also $25,000. Minn.Stat. § 65B.49, subd. 4(1) (1982).

not withdraw from arbitration prior to the arbitrators' award, although withdrawal is permitted under common law. *Litchsinn v. American Interinsurance Exchange,* 287 N.W.2d 156, 160 (Iowa 1980).

We acknowledge the freedom of the parties to contract and, specifically, to provide by contract for an arbitration procedure fitting their needs. *See Walker v. American Family Mutual Insurance Co.,* 340 N.W.2d 599, 601 (Iowa 1983) (court must consider freedom to contract in determining whether to invalidate a contract on public policy grounds). As a general rule,

> freedom of contract should not be unduly restricted by ill-advised application of a [public policy] doctrine necessarily rather vague and uncertain in its limitations.

*Perkins v. Hegg,* 212 Minn. 377, 379, 3 N.W.2d 671, 672 (1942). The trial de novo provision affects only arbitrators' awards above the statutory minimum coverage, an area in which the parties have greater freedom to contract. Thus, the provision does not directly contravene the statutory policy favoring arbitration under the Minnesota No-Fault Automobile Insurance Act. *See* Minn.Stat. § 65B.525, subd. 1 (1986) (arbitration mandatory for claims under $5,000); Minn.Stat. § 65B.42()4) (1986) (one purpose of the No-Fault Act is to speed the administration of justice and ease the burden of litigation).

Freedom of contract, however, is a less persuasive factor when unequal bargaining power exists. As the supreme court has stated in discussing forum selection clauses,

> persuasive public policy reasons exist for enforcing a forum selection clause in a contract freely entered into by parties who have negotiated at arm's length.

*Hauenstein & Bermeister, Inc. v. Met-Fab Industries, Inc.,* 320 N.W.2d 886, 889 (Minn.1982). The court went on to state that forum selection clauses in adhesion contracts are unreasonable. *Id.* at 891.

A contract of adhesion is a contract which is "drafted unilaterally by a business enterprise" and presented to the public on a "take it or leave it" basis. *Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920, 924 (Minn.1982). A contract of adhesion exists if

> the parties were greatly disparate in bargaining power, * * * there was no opportunity for negotiation *and* * * * the services could not be obtained elsewhere.

*Id.* at 924–25 (emphasis in original) (citations omitted).

We recognize the record here is insufficient to establish that the contract between Schmidt and Midwest was a contract of adhesion. As the supreme court has stated, however, in adopting the doctrine of protecting the reasonable expectations of the insured,

> [m]ost courts recognize the great disparity in bargaining power between insurance companies and those who seek insurance. Further, they recognize that, in the majority of cases, a lay person lacks the necessary skills to read and understand insurance policies, which are typically long, set out in very small type and written from a legalistic or insurance expert's perspective. Finally, courts recognize that people purchase insurance relying on others, the agent or company, to provide a policy that meets their needs.

*Atwater Creamery Co. v. Western National Mutual Insurance Co.,* 366 N.W.2d 271, 277 (Minn.1985). The trial de novo provision not only favors the insurer, in a contractual relationship which in most situations is one of unequal bargaining power and little opportunity for negotiation, but also contravenes public policies favoring arbitration and judicial economy. We accordingly hold that the trial de novo provision in Schmidt's uninsured motorist endorsement is void as against public policy. *See Pye v. Grunert,* 201 Minn. 191, 193–94, 275 N.W. 615, 616 (1937) (the law looks to the general tendency of contracts claimed to be against public policy rather than the individual contract).

Arbitration clauses in uninsured motorist endorsements serve to reduce the potential conflict between the insurer's interest in minimizing the fault of its insured in suits against third parties and its interest in minimizing the fault of the uninsured mo-

torist in any litigation against the insured. *Worthington v. Farmers Insurance Exchange,* 77 Wis.2d 508, 253 N.W.2d 76, 81 (1977); *see also* 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 22.3 (2d ed. 1987). Even though it applies only to damages issues, the trial de novo provision conflicts with that arbitration function. We recognize that the provision does not interfere with the binding nature of arbitration on issues of coverage. We hold only that the trial de novo provision in the uninsured motorist endorsement may not be enforced against an insured seeking confirmation of an arbitrators' award.

### DECISION

Principles of estoppel do not bar appellant's challenge to the trial de novo provision. The trial court erred in enforcing the provision against appellant-insured.

Reversed.