David **SCHMIDT**, Respondent,

v.

**MIDWEST FAMILY MUTUAL INSURANCE COMPANY,** Petitioner, Appellant.

No. C0–87–782.

Supreme Court of Minnesota.

Aug. 5, 1988.

Thomas L. Garritty, Moorhead, for appellant.

Nancy S. Fay, Moorhead, for respondent.

KELLEY, Justice.

Appellant Midwest Family Mutual Insurance Company (Midwest) issued an automobile insurance policy to respondent David Schmidt. Part C of the policy provided uninsured motorist coverage. It likewise provided for arbitration on demand of either party with respect to coverage or amount of damages. The arbitration provision, however, was modified by the extension to either party of a further right to trial when the arbitration award exceeded the minimum limit for body injuries provided in the applicable financial responsibility law.[1] Concluding that by granting a further right to trial, the clause modifying the arbitration right contravened the public policy of the state, the court of appeals held the clause to be void and unenforceable. *Schmidt v. Midwest Family Mut. Ins. Co.*, 413 N.W.2d 178 (Minn.App.1987). We affirm.

During the policy period Schmidt sustained personal injuries resulting from an automobile collision with an uninsured motorist. When unable to agree on its value, Midwest and Schmidt agreed to arbitrate his claim for uninsured motorist coverage. Schmidt then served upon the insurer a written demand for arbitration as provided by the policy. The arbitrators ultimately awarded Schmidt $45,000 in uninsured motorist benefits—an award $20,000 in excess of the $25,000 minimum limit for body injury liability specified by Minn.Stat. § 65B.49, subd. 3 (1982) (Minnesota's financial responsibility law). Schmidt's motion in the district court for confirmation of the award pursuant to Minn.Stat. § 572.18 (1986), was not only objected to by Midwest but it, in turn, as authorized by the policy, asserted its policy right for a trial de novo. The district court affirmed Midwest's right to a trial de novo under Part C of the policy. Accordingly, it denied Schmidt's motion seeking confirmation.

The trial court in its memorandum acknowledged the usual deference afforded

1. The pertinent policy provision provides:
    If we and a covered person do not agree:
    1. Whether that person is legally entitled to recover damages under this part; or
    2. As to the amount of damages;
    either party may make a written demand for arbitration. * * *
    A decision agreed to by two of the arbitrators will be binding as to:
    1. Whether the covered person is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

to Minnesota's strong policy favoring arbitration, epitomized by language appearing in such of our cases as *Ramsey County v. American Federation of State, County and Municipal Employees, Council 91, Local 8*, 309 N.W.2d 785, 789 (Minn.1981); and in *Layne–Minnesota Co. v. Regents of University of Minn.*, 266 Minn. 284, 288, 123 N.W.2d 371, 375 (1963). Nonetheless, in upholding the validity of the trial de novo clause it chose to afford primacy to a fundamental consideration underlying that policy, to-wit, that arbitration affords to contracting parties the right to control resolution of disputes arising out of contractual relationships by contractual definition of the scope of the process. *See, e.g., Layne–Minnesota Co., supra; Travelers Indem. Co. v. Hayes Contractors, Inc.*, 389 N.W.2d 257, 259 (Minn.App.1986).[2]

The court of appeals panel neither ignored nor deprecated the importance of that right the law affords contracting parties to structure an arbitration procedure to meet their unique needs. Indeed, it cautioned it should not be restricted by any vague and uncertain notions of public policy. However, in the context of evaluating an insurance policy provision, which, in effect, places unreasonable restrictions upon the overriding general state policy which is supportive of arbitration, it apparently felt emphasis on that underlying right to be less persuasive, and, when appropriate, should be subordinated so as to not totally frustrate the policy favoring arbitration. It concluded the trial de novo provision in Schmidt's policy effected just such an unreasonable restriction. *Schmidt*, 413 N.W.2d at 181.

In its appeal to us, Midwest, of course, urges us to reject that ruling and to affirm the trial court's analysis, which, it asserts, correctly reflects a dual policy that permits contracting parties to structure arbitration, while simultaneously reserving to contracting parties the fundamental right to a court trial.

Before addressing that issue, we first consider a related contention advanced by Midwest. It asserts that since Schmidt initially voluntarily agreed to arbitrate his uninsured motorist claim, and thereby gained the benefits of arbitration, he is now estopped to challenge the validity of the trial de novo clause which forms an integral part of the policy's arbitration provision.

At the outset, we note that some dispute exists as to whether Schmidt "voluntarily" demanded arbitration. However, for the purpose of resolving the issue, we assume he did initiate the arbitration.[3] Even so, the fact that Schmidt demanded and participated in arbitration would be insufficient, by itself, to give rise to an estoppel. Additionally, to satisfy estoppel requirements, the evidence must establish that Schmidt retained sufficient benefit from the arbitration to now estop him from asserting that the trial de novo clause of Part C of the policy is void and unenforceable. *See, e.g., Larx Co. v. Nicol*, 224 Minn. 1, 27, 28 N.W.2d 705, 719 (1946) (party retaining a benefit from a contract may be later estopped from challenging the agreement on public policy grounds). Midwest contends that by demanding arbitration, Schmit retained in himself a benefit consisting of the right to demand a trial de novo if the award exceeded $25,000.

2. This consideration was best synopsized by our statement in *Layne–Minnesota Co.*, 266 Minn. at 288–89, 123 N.W.2d at 375:

Thus, contracting parties, desiring to avail themselves of the benefits of arbitration, retain control over the arbitration process by the language of their agreements. In contracts providing for arbitration for future controversies, the parties may narrowly limit arbitrability or they may comprehensively provide that all disputes, whether arising under the terms of the contract or growing out of their relationship—even though not cogniza-

ble in a court of law or equity—may be referable to arbitration.

3. Schmidt asserts that actions of Midwest claims representatives virtually forced him to proceed with arbitration. Admittedly, Schmidt's written demand for arbitration was filed after the arbitration process had commenced, providing some credence to that assertion. On the other hand, there exists evidence supporting Midwest's contention as well as a conclusion that the arbitration was mutually consented to by the parties.

Therefore, Midwest asserts, he owed a mutual contractual obligation to the insurer to accede to, and not challenge, its demand for a trial de novo.

Though Schmidt was afforded a theoretical contract right to demand a trial de novo following arbitration, as a practical matter any benefit to him flowing from that right is in reality ephemeral. Rarely, if ever, would one in his position assert it. Aside from the theoretical right, we find it difficult to ascertain any substantial practical benefit inuring to Schmidt from the clause. When the arbitration award is less than $25,000 he loses his right to trial; but when the award exceeds that amount it is subject to divesture by the unilateral act of the insurer. Midwest's arbitration provision, as modified by the trial de novo provision, instead of affording to an insured a retained benefit subjects the insured to the possibility of having to sustain anew the burden of establishing the claim before a different, and more formal, tribunal in which the insured would be exposed to the risks inherent in court litigation before recovering any damages, when, without question, the insured is entitled to at least some damages—the only dispute relating to the amount. Furthermore in this case, Schmidt does not assume an inconsistent position by challenging the validity of the de novo trial clause. His position has been consistent at all times since the inception of this dispute. First, he demanded arbitration, as was his right under the policy. He later moved the court for an order confirming the arbitration award, as was his right under the law. The inconsistency, if any inconsistency exists, arises from the trial de novo provision itself, which by its terms is incongruous with the policy's arbitration on demand provision. Therefore, we hold respondent's estoppel assertion to be meritless.

Turning, then, to consider the merits of Schmidt's contention that Midwest's trial de novo provision conflicts with the state's public policy, we initially observe that we have never previously addressed the issue. Moreover, until its opinion in the instant case, neither had the court of appeals addressed the issue in the context of a holding, although on two previous occasions it did allude to public policy arguments advanced in cases pending before it in which insureds asserted that such trial de novo provisions were invalid. On those occasions it was unnecessary for the court of appeals to reach the issue because the cases were decided on estoppel grounds. *See, e.g., Lysholm v. Liberty Mut. Ins. Co.,* 404 N.W.2d 19 (Minn.App.1987); *Pierce v. Midwest Family Mut. Ins. Co.,* 390 N.W.2d 358 (Minn.App.1986).

We commence our analysis by noting that the state's public policy encouraging and furthering arbitration is not of recent vintage. A number of our cases decided over many years before legislative enactment of the Uniform Arbitration Act (UAA) (Minn.Stat. § 572.08–30 (1986)), reflect this court's dedication to a public policy strongly favoring arbitration. *See, e.g., Dunshee v. State Farm Mut. Auto. Ins. Co.,* 303 Minn. 473, 477 n. 1, 228 N.W.2d 567, 570 n. 1 (1975), and cases cited therein. By enactment of the UAA, the legislature statutorily stamped its imprimatur on that long-standing policy endorsing arbitration as a means of resolving disputes between contracting parties by recognizing that it provides a comparatively informal, expeditious, and inexpensive procedure. Even though the UAA does, in certain instances, contemplate and, indeed, permits resort to the courts, *see, e.g.,* Minn.Stat. § 572.26, the act itself manifests the intent to expand, rather than constrict, the policy which had evolved of encouraging voluntary resolution of disputes between contracting parties. *Eric A. Carlstrom Const. Co. v. Independent School Dist. No. 77,* 256 N.W.2d 479 (Minn.1977).

Admittedly, the preeminent position arbitration occupies in Minnesota law rests in a large part on the concept that it does reserve to the contracting parties the right generally to limit or expand the arbitrable issues, as well as to provide the procedure governing the operation of the forum. The substance of Midwest's appeal is that the holding of the court of appeals subordinates this admittedly important underlying consideration to the point of substan-

tially threatening its destruction. *See, e.g., Cloquet Educ. Ass'n. v. Independent School Dist. No. 94, Cloquet,* 344 N.W.2d 416 (Minn.1984), *Grover–Dimond Assoc. v. American Arbitration Ass'n.,* 297 Minn. 324, 211 N.W.2d 787 (1973). We concede that the concern expressed by Midwest, when considered in the abstract, is not completely meritless. And, as did the court of appeals, we admonish trial courts to refrain from restricting such contract rights by reliance on "vague and uncertain" notions of public policy. *Schmidt,* 413 N.W.2d at 181. However, in those rare instances when the existing circumstances surrounding the execution or enforcement of a contract term would result in complete frustration of the very essence of the public policy favoring arbitration, courts may be justified in refusing to enforce the term.

■ Does the inclusion of Midwest's trial de novo clause in the arbitration terms of Schmidt's automobile insurance policy present such an instance? We conclude that it does. The policy's arbitration provision, instead of providing a speedy, informal, and relatively inexpensive procedure for resolving controversies between the parties—the raison d'etre of arbitration—instead substantially thwarts those policy goals. By permitting resort to the court system for a trial de novo notwithstanding the absence of any claimed impropriety in the arbitration process itself, by fostering multiple hearings in multiple forums, by increasing the costs to the contracting parties, and, by unnecessarily, and without real cause, extending the time consumed in resolving the controversy it likewise operates to defeat goals designed to promote judicial economy and respect for the judicial system.

The insurance policy between Midwest and Schmidt may not technically qualify as a contract of adhesion. Nevertheless, it possesses some earmarks of an adhesive contract. As demonstrated, it lacks mutuality of remedy, and was entered into between parties possessing unequal bargaining power with but slight opportunity for arms length negotiation.

Not infrequently, the position of an automobile insurer with respect to its insured's culpability at the time of an accident may differ when defending the insured against a third party claim from that when defending itself against an insured's uninsured or underinsured motorist claim. In the former the insurer's interest usually is to minimize that culpability, whereas in the latter two instances its interest frequently is to maximize the insured's fault. We recognize that one of the purposes, at least, of providing for arbitration on demand in uninsured and underinsured motorist coverage endorsements is to minimize that conflict of interest. Adoption of Midwest's position would neither serve nor promote that purpose.

Courts of three other jurisdictions, which apparently share our view of the public policy promoting the use of contract arbitration, have considered automobile insurance policy trial de novo provisions virtually identical to that in Midwest's policy. We think it significant that each court has utilized ways to avoid their enforcement. *See, e.g., Chrisman v. Superior Court (General Acc. Ins. Co.),* 191 Cal.App.3d 1465, 236 Cal.Rptr. 703 (1987);[4] *Liberty Mut. Ins. Co. v. Lodha,* 131 Misc.2d 670, 500 N.Y.S.2d 989 (N.Y.Sup.Ct.1986) (court did not reach public policy issue, but on grounds of waiver nonetheless denied a trial); *Zook v. Allstate Ins. Co.,* 349 Pa.Super. 328, 503 A.2d 24 (1986) (policy provision ambiguous, but court noted it knew of no authority to permit a court to avoid an arbitrator's award and conduct a trial de novo absent fraud, misconduct or illegality).

We acknowledge those cases lack precedential authority on the precise issue before us, but believe they do demonstrate the reluctance of appellate courts generally

---

**4.** The California Insurance Code, which governs automobile insurance, unlike that of Minnesota, mandates binding arbitration of all disputes between insurers and insureds. In contrast, Minnesota's No–Fault Law mandates arbitration of only those claims less than $5,000. *See* Minn.Stat. § 65B.525, subd. 1 (1986).

to enforce this type of trial de novo provision.

The public policy of this state favoring the employment of arbitration is clearly and firmly established in our law. By our decisions it antedated the UAA. By enactment of the UAA it has been legislatively endorsed. Although neither this court in its decision, nor the legislature in enactment of the UAA has expressly required that contract arbitration always be binding, the extended history of encouraging arbitration clearly implies that normally it should be, and, that at least with respect to damage issues, the arbitration award should not be subject to de novo trial court review. To hold otherwise would be to relegate arbitration to little more than a precursor to litigation rather than as a means through which contracting parties may achieve final resolution of claims expeditiously and with relatively little expense. Those reasons seem to us to be particularly compelling when considering trial de novo provisions which have been inserted into insurance contracts. We hold, consequently, that Midwest's trial de novo clause violates public policy and is unenforceable.

Affirmed.