**WORLDWIDE INSURANCE GROUP,**
**Defendant Below, Appellant,**

v.

**Ruth D. KLOPP, Plaintiff**
**Below, Appellee.**

Supreme Court of Delaware.

Submitted: Dec. 12, 1991.
Decided: Jan. 16, 1992.

Sean A. Dolan (argued), Tybout, Redfearn, & Pell, Wilmington, for appellant.

Morton R. Kimmel (argued), and William R. Peltz, Kimmel, Weiss & Carter, P.A., Wilmington, for appellee.

Before HORSEY, MOORE and WALSH, JJ.

WALSH, Justice:

In this appeal, we are called upon to decide whether an arbitration provision in an automobile insurance policy is void as against public policy. The provision in question permits either party to demand a trial *de novo* from an uninsured/underinsured arbitrators' decision only if the amount of the arbitrators' award exceeds state financial responsibility limits. The appellant, Worldwide Insurance Group (Worldwide), appeals from a decision of the Chancery Court granting the appellee's, Ruth Klopp's ("Klopp"), motion for entry of judgment based on the arbitration award. Worldwide contends that the policy provision permitting appeal *de novo* is not unconscionable or contrary to public policy. We hold that this provision, which permits either party to demand trial *de novo* from the uninsured/underinsured arbitrators' decision only if the arbitrators' award exceeds the financial responsibility limits of the State of Delaware, is contrary to the public policy of this State and thus unenforceable. Accordingly, we affirm the decision of the Court of Chancery.

## I

The factual circumstances giving rise to this appeal are straightforward and not in dispute. The question of law presented, however, is one of first impression. On July 4, 1988, Klopp was involved in an automobile accident with an uninsured motorist. The accident resulted in Klopp sustaining permanent injuries to her neck, back and right lower extremity. Klopp filed a claim under the uninsured motorist coverage of her insurance policy with Worldwide. As required by the policy, she made written demand for arbitration to resolve her claim for damages.

On December 4, 1990, an uninsured motorist arbitration panel, after a hearing, awarded Klopp $90,000. Worldwide's policy provided that if the arbitration award exceeded the minimum limit for liability specified by the financial responsibility law of the State of Delaware,[1] either party could demand a trial *de novo*. On December 20, 1990, Worldwide notified Klopp in writing of its election to appeal the arbitration panel's award under that aforesaid provision.

On March 4, 1991, Worldwide filed a petition in the Court of Chancery pursuant to the Delaware Uniform Arbitration Act, 10 *Del.C.* § 5701 *et seq.*, to vacate the arbitrators' award. Worldwide alleged that it had exercised its right of appeal under the policy and was thus not obligated to pay the arbitration award. Klopp responded with a motion for entry of judgment based on the arbitrators' award, contending that the purported appeal *de novo* by Worldwide was based on an unenforceable policy provision.

After a hearing, the Court of Chancery entered an order granting Klopp's motion. The Chancellor, believing that he was bound by a previous decision of the Court of Chancery which invalidated a similar policy provision, ruled that the provision permitting both parties to appeal only from awards which exceeded the minimum finan-

---

**1.** 21 *Del.C.* § 2118(a)(2)(b) provides in pertinent part:

The minimum insurance coverage which will satisfy the financial responsibility law is $15,000 per person and $30,000 per accident.

cial liability limits was void as against public policy. This appeal followed.

## II

■ The parties' views of the arbitration provision are polar opposites. Worldwide contends that the provision [2] is a clear and unambiguous contractual undertaking granting both the insured and the insurer the right to appeal any award in excess of financial responsibility limits. Klopp argues that this provision is unconscionable and void as against public policy because it affords an advantage to one of the parties under a contract of adhesion. We are thus confronted with a clear question of law subject to plenary review. *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del. Supr., 445 A.2d 927 (1982).

While this Court has not had occasion to examine the specific policy provision in issue, we have ruled upon the general validity of arbitration clauses in insurance contracts. In *Graham v. State Farm Mutual Automobile Insurance Company*, Del. Supr., 565 A.2d 908 (1989), we sustained the enforceability of a policy provision requiring binding arbitration despite the adhesive nature of such agreements. We cautioned, however, that "if the arbitration mechanism established by the policy had been unfairly structured, a finding of unconscionability might be appropriate." *Id.* at 912. Applying this caveat, the Chancery Court in *Fritz v. Nationwide Mutual Insurance Company*, Del.Ch., C.A. No. 1369, Hartnett, V.C., 1990 WL 186448 (Nov. 29, 1990), *reh'g denied*, 1991 WL 23585 (February 19, 1991), ruled that a provision identical to the one here under review was "un-

fairly structured in that its effect is to allow the insurance company to avoid a high award whether or not it is fair and just. The terms [of such provision] are therefore unconscionable because the arbitration mechanism is unfairly structured." *Fritz*, slip op. at 4 (February 19, 1991). It was this ruling which the Chancellor felt constrained to follow in the present dispute.

■ The public policy of this State favors the resolution of disputes through arbitration. *Graham*, 565 A.2d at 911. An insurance policy which provides for arbitration as its primary mechanism for dispute resolution is thus enforceable against the wishes of either contractual party. While in *Graham* this Court ruled that an admittedly adhesive insurance contract is not void per se, our approval of the arbitration concept does not extend to any feature of a contract of adhesion, which, in whole or in part, is unconscionable within the meaning of 6 *Del.C.* § 2–303.[3] *Id.* at 912.

The various jurisdictions which have considered directly policy provisions which limit the appealability of arbitrator's awards have reached different results. A majority have held that this type of restrictive provision is void as against public policy. *See, e.g., Mendes v. Automobile Insurance Company of Hartford*, 212 Conn. 652, 563 A.2d 695 (1989); *Pepin v. American Universal Insurance Co.*, R.I.Supr., 540 A.2d 21 (1988); *Schmidt v. Midwest Family Mutual Insurance Company*, Minn.Supr., 426 N.W.2d 870 (1988); *Nationwide Mutual Insurance Company v. Marsh*, 15 Ohio St.3d 107, 472 N.E.2d 1061 (1984) (Sweeney,

---

**2.** The disputed provision in the Worldwide policy provides:

> Unless both parties agree otherwise, arbitration will take place in the county in which the covered person lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to: (1) whether the covered person is legally entitled to recover damages; (2) the amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the Financial Responsibility Law of Delaware. If the amount exceeds that limit, either party may demand the right to a trial. This demand

> must be made within sixty days of the arbitrator's decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**3.** 6 *Del.C.* § 2–302(1) provides that if the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

J., concurring); *Goulart v. Crum & Forster Personal Insurance Company,* 222 Cal.App.3d 527, 271 Cal.Rptr. 627 (1990).

The rationale underlying rejection of the restrictive appeal provision was aptly stated by the Minnesota Supreme Court in *Schmidt, supra:*

> When the arbitration award is less than $25,000 [the insured] loses his right to trial; but when the award exceeds that amount it is subject to divesture by the unilateral act of the insurer. Midwest's arbitration provision, as modified by the trial de novo provision, instead of affording to an insured a retained benefit subjects the insured to the possibility of having to sustain anew the burden of establishing the claim before a different, and more formal, tribunal in which the insured would be exposed to the risks inherent in court litigation before recovering any damages, when, without question, the insured is entitled to at least some damages the only dispute relating to the amount.

426 N.W.2d at 873.

The *Schmidt* court also noted that where the enforcement of a contract results "in complete frustration of the very essence of the public policy favoring arbitration, courts may be justified in refusing to enforce the term." *Id.* at 874.

In two jurisdictions, policy provisions of the type here under review have been deemed not violative of public policy and, where the language of the contract is clear, have been enforced. *See, e.g., Cohen v. Allstate Insurance Company,* 231 N.J.Super. 97, 555 A.2d 21 (1989), *cert. denied,* 117 N.J. 87, 563 A.2d 846 (1989); *Roe v. Amica Mutual Insurance Company,* Fla. Supr., 533 So.2d 279 (1988).

We think the reasoning of those jurisdictions which follow the premise that such language is contrary to public policy is more persuasive. Under the present policy language both parties are bound by a low award which an insurance company is unlikely to appeal. While high awards may be appealed by either party, common experience suggests that it is unlikely that an insured would appeal such an award. It is the insurer who, generally, would be dissatisfied with a high award. The policy provision thus presents an "escape hatch" to the insurer for avoidance of high arbitration awards, whether or not the award was fair and reasonable. However, the insured, who would tend to be dissatisfied with a low award, is barred from appealing such an award, *i.e.,* an award under financial responsibility limits.

■ It should be noted that both New Jersey and Florida, the two jurisdictions that do not find this disputed provision contrary to public policy, have statutes which specifically provide for restricted appeals from an uninsured motorist arbitration award. To the extent that the restriction implicates concerns of public policy, legislative approval of a restricted appeal mechanism is significant. No such expression exists under the Delaware Uniform Arbitration Act. 10 *Del.C.* § 5713 specifically provides:

> The Court shall confirm an award upon complaint or application of a party in an existing case made within one year after its delivery to him, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in §§ 5714 and 5715.[4]

In our view, the policy provision at issue here promotes litigation, circumvents the arbitration process and provides an arbitration escape device in favor of an insurance company. So viewed, the provision is contrary to the public policy of this State. Accordingly, we hold that a provision in an insurance policy which allows either party to demand a trial *de novo,* if the amount of

---

4. Sections 5714 and 5715 allows the court to vacate an award when corruption, fraud, partiality, or an invalid arbitration agreement is present. The court can also vacate an award if an arbitrator exceeded his power or the award was procured by other undue means. The court may also modify or correct an award if: (1) there is evidence of a miscalculation of figures, (2) the award is premised upon a matter not submitted to the arbitrator, or (3) the award is imperfect as a matter of form. None of these circumstances apply to this case.

an arbitrators' award exceeds a stated minimum amount but denies review for lesser awards, is void as against public policy and unenforceable. The Chancery Court was correct in striking this unconscionable clause while enforcing the remainder of the contract.

The judgment of the Court of Chancery is AFFIRMED.