FIREMAN'S FUND INSURANCE COMPANIES, Plaintiff-Appellee, v. DEBORAH BUGAILISKIS, Defendant-Appellant (Ronald Bugailiskis, Defendant).

Second District    No. 2—95—1115

Opinion filed February 28, 1996.

James J. Hermann, Jr., of James J. Hermann, Jr., & Associates, P.C., of Waukegan, for appellant.

Robert M. Smith and Kurt E. Olsen, both of Aronson, Smith & Cross, of Chicago, for appellee.

JUSTICE THOMAS delivered the opinion of the court:
Pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), defendant, Deborah Bugailiskis, appeals the denial of her motion to dismiss plaintiff's complaint demanding a jury trial of defendant's underinsured motorist claim. The issues on appeal are: (1) whether an underinsured motorist coverage arbitration clause which allows arbitration awards to be appealed only when they exceed the minimum liability amount set forth in the Illinois Safety Responsibility Law (625 ILCS 5/7—100 et seq. (West 1994)) is void as against public policy; and (2) if the clause is valid, whether it allows a jury trial as to liability and damages or only as to damages. We reverse and remand.

On March 26, 1989, defendant was injured when a vehicle operated by Rob Delaney ran over her legs. Defendant filed a complaint in the circuit court of Lake County, and Rob Delaney's insurer paid its policy limit of $25,000. At the time of the occurrence, Ronald Bugailiskis, defendant's father, had an automobile insurance policy with plaintiff, Fireman's Fund Insurance Company, providing underinsured motorist coverage in the amount of $300,000. Ronald Bugailiskis was a party to the lawsuit but is not a party to this appeal. Defendant asserted a claim under that policy for the amount of the damages which exceeded the $25,000 paid by Delaney's carrier.

The claim was submitted to arbitration. On October 8, 1993, the arbitration panel found plaintiff liable and found that defendant's damages were $192,414.99. The panel also found that defendant's comparative negligence was $27^{1}/_{2}\%$, which resulted in a net award of $139,500.85.

The arbitration provision in the policy provided in relevant part:
"A decision agreed to by two of the arbitrators will be binding
as to:

a. Whether the **insured** is legally entitled to recover damages;
and

b. The amount of damages. This applies only if the amount does
not exceed the minimum limit for bodily injury liability specified
by the Illinois Safety Responsibility Law. If the amount exceeds
that limit, either party may demand the right to a trial. This
demand must be made within 60 days of the arbitrator's decision.
If this demand is not made, the amount of damages agreed to by
the arbitrators will be binding."

Pursuant to the arbitration provision, plaintiff rejected the
award. On December 2, 1993, plaintiff filed a complaint demanding a
jury trial.

On August 8, 1995, the trial court denied defendant's motion to
dismiss but found that plaintiff was entitled to a trial only as to the
damages issue. On August 17, 1995, the trial court entered an order
pursuant to Supreme Court Rule 308, finding that the issues created
by defendant's motion to dismiss involve questions of law as to which
there is a substantial ground for difference of opinion and that an im-
mediate appeal of the August 8, 1995, order may materially advance
the ultimate termination of the litigation. On August 31, 1995, defen-
dant filed an application for leave to appeal pursuant to Supreme
Court Rule 308. On September 27, 1995, we allowed defendant's ap-
plication for leave to appeal.

The trial court's August 17, 1995, order certified the following
questions for our review:

"1. Whether language in Plaintiff's policy providing for a new
trial only if an arbitration award exceeds the financial responsibil-
ity limit of $20,000.00 per person is invalid, as it discriminates
against the insured who cannot appeal a low award or no award,
but gives the insurer trial *de novo* of a high award and is therefore
violative of public policy, as a majority of states considering the
question have held?

2. Whether by virtue of the policy language trial is limited to
the issue of damages only?"

■ Illinois law encourages arbitration as a means of reducing liti-
gation in the court system. *Charles O. Finley & Co. v. Kuhn*, 569 F.2d
527 (7th Cir. 1978); *Mayflower Insurance Co. v. Mahan*, 180 Ill. App.
3d 213, 217 (1988). However, an arbitration clause is not against pub-
lic policy merely because it permits nonbinding arbitration. *Ameri-
can Family Mutual Insurance Co. v. Baaske*, 213 Ill. App. 3d 683, 688
(1991); *Mayflower*, 180 Ill. App. 3d at 217.

Our supreme court has not yet determined the validity of this type of arbitration clause. However, the language allowing the parties to demand a trial if the arbitration award is above the minimum liability amount is common in insurance policies, not just in Illinois, but in several other states. Several courts have addressed the validity of this type of arbitration clause language, and a majority of those courts have held that the clause itself is void as against public policy. See *Mendes v. Automobile Insurance Co.*, 212 Conn. 652, 563 A.2d 695 (1989); *Worldwide Insurance Group v. Klopp*, 603 A.2d 788 (Del. 1992); *Schmidt v. Midwest Family Mutual Insurance Co.*, 426 N.W.2d 870 (Minn. 1988); *Hanover Insurance Co. v. Losquadro*, 157 Misc. 2d 1014, 600 N.Y.S.2d 419 (1993); *O'Neill v. Berkshire Mutual Insurance Co.*, 786 F. Supp. 397 (D. Vt. 1992).

In Connecticut, Delaware, Minnesota, New York, and Vermont, the courts have held void as against public policy the type of arbitration clause contained in the policy in the present case. The courts have held that, although the clause is ostensibly neutral because it allows either party to demand a trial if the award exceeds the minimum liability amount, application of the "escape hatch" language of the clause unfairly and unequivocally favors the insurer over the insured. *O'Neill*, 786 F. Supp. at 398. The courts have held that the language allows the insurer to avoid a high award while binding the insured to a low award. *O'Neill*, 786 F. Supp. at 398-99.

In *Klopp*, the court stated:

"Under the present policy language both parties are bound by a low award which an insurance company is unlikely to appeal. While high awards may be appealed by either party, common experience suggests that it is unlikely that an insured would appeal such an award." *Klopp*, 603 A.2d at 791.

Moreover, courts have held that, although the insurance policy may not technically qualify as a contract of adhesion, it possesses some of the earmarks of an adhesive contract. *Schmidt*, 426 N.W.2d at 874. The provision lacks mutuality of remedy and was entered into between parties possessing unequal bargaining power with little or no opportunity for arm's length negotiation. *Schmidt*, 426 N.W.2d at 874.

Courts have also concluded that the clause contravenes the public policy behind arbitration—the efficient, cost-effective resolution of disputes. In *Schmidt*, the court explained:

"The policy's arbitration provision, instead of providing a speedy, informal, and relatively inexpensive procedure for resolving controversies between parties—the raison d'etre of arbitration—instead substantially thwarts those policy goals. By permitting

resort to the court system for a trial de novo notwithstanding the absence of any claimed impropriety in the arbitration process itself, by fostering multiple hearings in multiple forums, by increasing the costs to the contracting parties, and, by unnecessarily, and without real cause, extending the time consumed in resolving the controversy[,] it likewise operates to defeat goals designed to promote judicial economy and respect for the judicial system." *Schmidt*, 426 N.W.2d at 874.

Courts in several other states have invalidated this type of provision for this reason. See *Goulart v. Crum & Forster Personal Insurance Co.*, 222 Cal. App. 3d 527, 271 Cal. Rptr. 627 (1990); *Field v. Liberty Mutual Insurance Co.*, 769 F. Supp. 1135 (D. Haw. 1991); *Shaefer v. Allstate Insurance Co.*, 63 Ohio St. 3d 708, 590 N.E.2d 1242 (1992); *Slaiman v. Allstate Insurance Co.*, 617 A.2d 873 (R.I. 1992).

Only in Florida and New Jersey have the courts held that arbitration clauses with this type of "escape hatch" provision do not violate public policy. See *Roe v. Amica Mutual Insurance Co.*, 533 So. 2d 279 (Fla. 1988); *Cohen v. Allstate Insurance Co.*, 231 N.J. Super. 97, 555 A.2d 21 (1989).

Plaintiff argues that this issue is controlled by *Mayflower*. We disagree. Although *Mayflower* upheld against a public policy challenge a provision identical to the one at issue in the present case, the court in *Mayflower* merely held that nonbinding arbitration is not against public policy. *Mayflower*, 180 Ill. App. 3d at 217. In *Mayflower*, the insured apparently never argued and the court never addressed whether the inequity created by the application of the right to a trial only when the award is high contravenes public policy. Accordingly, we are not constrained to reach the same result.

Although the court in *Mayflower* held that nonbinding arbitration itself does not violate public policy, nonbinding arbitration does frustrate the public policy goal of arbitration in many cases since it adds costs and delay when an award is rejected. See *Schmidt*, 426 N.W.2d at 874. When considering that cost and delay, the unequal application of the escape clause, and the fact that the contract possesses many of the earmarks of a contract of adhesion, we are persuaded, as are the majority of the courts that have considered the issue, that the trial *de novo* clause violates public policy and is unenforceable.

Plaintiff argues that we should not follow the cases from other jurisdictions that have held the arbitration provision is against public policy because those cases involved an *un*insured motorist claim while the present case involves an *under*insured motorist claim. We note that some of the cases from other jurisdictions did in fact involve

*under*insured motorist claims. In addition, plaintiff has not offered and we cannot think of any reason why the provision is less violative of public policy because it is applied to an *under*insured motorist claim instead of an *un*insured motorist claim.

The contract allows plaintiff to demand a jury trial if the arbitration award requires plaintiff to pay any amount. This is because any award under the minimum liability amount would be covered by another policy in an *under*insured motorist claim. In an *un*insured motorist claim, the contract subjects plaintiff to $20,000 (the minimum liability amount) of liability without the right to demand a jury trial. Therefore, the unequal application of the "escape hatch" provision is actually less oppressive to the insured in an *un*insured motorist case.

Because we have held that the trial *de novo* provision violates public policy, plaintiff has no right to a trial and the arbitration award is binding. See *Schmidt*, 426 N.W.2d at 875; *Klopp*, 603 A.2d at 791-92. Because we have found that plaintiff has no right to a trial, we need not address whether the trial *de novo* provision allows a trial as to liability and damages or only as to damages.

For the foregoing reasons, we reverse the judgment of the circuit court of Lake County denying defendant's motion to dismiss and remand this cause for the trial court to enter an appropriate order dismissing plaintiff's complaint.

Reversed and remanded with directions.

McLAREN, P.J., and HUTCHINSON, J., concur.