**DESIGN BENEFIT PLANS, INC., an Illinois corporation, Plaintiff,**

v.

**John ENRIGHT, individually, and John Enright, Inc., Defendants.**

No. 96 C 50067.

United States District Court,
N.D. Illinois,
Western Division.

Sept. 27, 1996.

Edward R. Telling, Scott C. Sullivan, John J. Holevas, Marc C. Gravino, Williams & McCarthy, Rockford, IL, Diane Renee Schroeder, Rockford, IL, for plaintiff.

Michael F. O'Brien, McGreevy, Johnson & Williams, Rockford, IL, Patrick H. O'Neill, Law Offices of Patrick H. O'Neill, Fort Worth, TX, for defendants.

## *MEMORANDUM OPINION AND ORDER*

REINHARD, District Judge.

### INTRODUCTION

Originally filed in the circuit court of Winnebago County, Illinois, this action was removed to federal court on March 15, 1996 by defendants, John Enright ("Enright") and John Enright, Inc. ("JEI"), based on diversity jurisdiction. Upon removal, defendants filed their answer to the complaint, and JEI, in addition, filed a counterclaim against plaintiff, Design Benefit Plans, Inc. ("DBP"). Shortly thereafter, DBP filed several motions, including the pending motion to compel mediation/arbitration of JEI's counterclaim and stay all proceedings as well as the pending motion to deposit funds into court.[1]

1. During the pendency of these two motions, the court brought to the parties' attention that, although it appeared that DBP intended to name JEI as a defendant, the original complaint did not properly name JEI as a corporate defendant and that JEI did not appear to be a party to this litigation, despite the fact that JEI joined in the notice of removal and answer to the complaint.

## BACKGROUND

DBP is an Illinois corporation which markets, sells and services health, life and related insurance products of various insurance carriers through agents located in states throughout the country. In August 1988, Enright contracted with DBP to be a sales agent. This agreement was subsequently superseded by an Agent Agreement entered into by JEI and DBP in April 1995. JEI resigned as an agent on August 1, 1995. The Agent Agreement prohibited JEI from recruiting DBP agents for a period of six months after its termination. It is alleged that defendants breached this provision by recruiting several DBP agents during this six-month period. The first amended complaint seeks a declaratory judgment (Count I), money damages for breach of contract (Count II) and money damages and injunctive relief for tortious interference with contractual relations (Count III). JEI's counterclaim relates to unpaid commissions arising from policies sold by JEI during the term of the Agent Agreement.

## CONTENTIONS

DBP moves to compel mediation and arbitration of JEI's counterclaim pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, contending that JEI's counterclaim is subject to a mandatory mediation/arbitration provision contained in the Agent Agreement. DBP moves to stay all proceedings in this action pursuant to section 3 of the FAA pending the resolution of JEI's counterclaim in mediation and arbitration. JEI also moves to deposit certain funds, i.e., the commissions, into the court pending the resolution of JEI's counterclaim. In response, JEI contends that DBP waived any rights it may have had under the mandatory mediation/arbitration provision in the Agent Agreement when it filed suit in state court, relying on *Midwest Window Sys., Inc. v. Amcor Indust., Inc.*, 630 F.2d 535, 537 (7th Cir.1980). JEI also contends that the mandatory media-

tion/arbitration provision is unenforceable because it is illusory, relying principally on *Hill–Harriss v. Gingiss Int'l, Inc.*, No. 91 C 6682, 1992 WL 22705 (N.D.Ill. Feb. 5, 1992) (Kocoras, J.). In its reply, DBP contends that JEI misstates the holding of *Midwest Window Sys., Inc.* and that the portion of the decision relied upon by JEI was used out of context. DBP further contends that it could not have waived mediation/arbitration of the counterclaim because it filed suit over a completely different matter. As to the validity of the mediation/arbitration provision, DBP points out that the February 5, 1992 order in *Hill–Harriss* was vacated by Judge Kocoras on a motion to reconsider in *Hill–Harriss v. Gingiss Int'l, Inc.*, No. 91 C 6682, 1992 WL 57952 (N.D.Ill. Mar. 20, 1992).[2] DBP further contends that the provision is not illusory because there is a mutual obligation to arbitrate at least some claims.

## DISCUSSION

### A. Motion to compel mediation/arbitration and stay proceedings

■ The court first considers whether DBP waived the mandatory mediation/arbitration provision in the Agent Agreement. JEI relies exclusively upon the Seventh Circuit's statement that "[l]ong ago in this circuit, we held that 'commencement of a suit in court rather than reliance upon arbitration, with answer by the opposing party upon the merits, was a waiver of the right to arbitrate by both parties,'" *see Midwest Window*, 630 F.2d at 537 (quoting *Galion Iron Works & Mfg. Co. v. J.D. Adams Mfg. Co.*, 128 F.2d 411, 413 (7th Cir.1942)), for the proposition that DBP waived its right to arbitration by filing suit. JEI's reliance upon that portion of *Midwest Window* is not particularly helpful to the court. One reason is that the quotation is used in a misleading fashion. The Seventh Circuit began its discussion of the waiver doctrine with that rule only to

Rather than denying the pending motions on this jurisdictional basis, the court permitted DBP to amend its complaint to add JEI as a defendant. *See Minute Order of September 10, 1996.* On September 18, 1996, DBP filed a first amended complaint formally naming JEI as a defendant.

Defendants agreed that their answer and JEI's counterclaim would stand as previously filed.

2. After DBP pointed out the subsequent decision of Judge Kocoras, JEI sought leave to file a supplemental brief, which this court denied.

abandon it in the very same decision in favor of a totality of circumstances test. *See id.* The court rejected the rigidity of the rule pronounced in *Galion* and held that the central inquiry is whether, under a totality of the circumstances, the defaulting party acted inconsistently with the right to arbitration. *Id.* While this circuit still applies the totality of circumstances test set forth in *Midwest Window,* the test has undergone significant changes since 1980, some of which are relevant to this discussion.

In *St. Mary's Medical Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co., Inc.,* 969 F.2d 585, 590 (7th Cir.1992), the Seventh Circuit clarified the role of prejudice in the test, holding that while it is a factor to consider, it was not a prerequisite for finding waiver. The court reiterated that no rigid rule exists as to what constitutes a waiver of the right to arbitrate. *Id.* at 587–88. In addition, while it recognized the strong federal policy favoring arbitration, embodied in the FAA, it noted that this federal policy is a policy favoring the enforcement of contracts, not a preference for arbitration over litigation. *Id.* at 590. Thus, a court should treat a waiver of the right to arbitrate the same as it treats the waiver of any other contract right. *Id.* In the Seventh Circuit's most recent pronouncement, *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390–91 (7th Cir.1995), the doctrine was further modified to reduce the significance of a party's invocation of the judicial process. The court held that the invocation of the judicial process merely creates a presumption of waiver which, in a variety of circumstances, may be rebutted or rescinded. *Id.* at 391.

Arguably, DBP's conduct does not support even a finding of presumptive waiver. DBP filed suit over defendants' alleged breach of the restrictive covenants contained in the Agent Agreement. The counterclaim, which relates to DBP's withholding of commissions, is separate and distinct from DBP's claims advanced in the first amended complaint. Thus, the matters DBP seeks to arbitrate were not injected into the litigation until JEI filed its counterclaim. Moreover, DBP did not answer the counterclaim; instead, DBP immediately moved to compel mediation/arbitration of JEI's counterclaim and stay proceedings pending resolution of those matters.[3] DBP has, at no time during the course of this litigation, acted inconsistently with its right to arbitrate JEI's counterclaim. The circumstances in this case, therefore, do not support a finding of waiver. *Cf. Commercial Union Ins. Co. v. Gilbane Bldg. Co.,* 992 F.2d 386, 390 (1st Cir.1993) (finding no waiver where plaintiff sought to compel arbitration of defendant's counterclaim which was separate and distinct from the claims in the complaint).

Even if DBP's act of filing suit somehow created a presumption of waiver in this case, the counterclaim can be seen as an "unexpected development" which justifies granting relief from the initial waiver. *Cabinetree,* 50 F.3d at 391. JEI's counterclaim significantly altered the nature of this litigation and operated to rejuvenate the right to demand arbitration. *See Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik GMBH,* 832 F.Supp. 1293, 1296 (E.D.Wis.1993) (holding that new allegations in amended complaint operated to rejuvenate right to demand arbitration) *cited with approval in Cabinetree,* 50 F.3d at 391. While in such circumstances prejudice to the party resisting arbitration weighs heavily in this analysis, *see Cabinetree,* 50 F.3d at 391, JEI has not advanced any claim of prejudice in this case. Thus, even if DBP initially waived its right to arbitration, JEI's counterclaim altered the nature of this litigation to a significant degree so as to justify rescission of DBP's waiver. Accordingly, DBP has not defaulted on its right to compel mediation/arbitration of JEI's counterclaim.[4]

---

**3.** DBP also moved to stay discovery in the entire case pending a ruling on these motions, a request which this court granted.

**4.** The court notes that JEI's counterclaim could also have operated to rejuvenate DBP's right to arbitrate the claims asserted in the first amended complaint. Because DBP has not formally moved to arbitrate its own claims, that issue is not properly before the court at this time. The parties may wish to consider this point, however, should DBP seek to arbitrate its claims as well.

■ Next, the court considers whether the mandatory mediation/arbitration provision in the Agent Agreement is unenforceable on the grounds that the provision is illusory because it lacks mutuality of obligation. The choice-of-law provision in the Agent Agreement provides that Illinois law governs the agreement. Thus, the court applies Illinois law in considering this contractual defense. *See Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 451 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996); *Cindy's Candle Co., Inc. v. WNS, Inc.*, 714 F.Supp. 973, 975 (N.D.Ill.1989).

The mandatory mediation/arbitration clause at issue in this case states the following:

> Except as otherwise provided in this Agreement, all claims, disputes, and controversies arising out of or in any manner relating to this Agreement, or any other agreement executed in connection with this Agreement, or to the performance, interpretation, application or enforcement hereof, including but not limited to breach hereof (in each case, "Dispute"), shall be referred to mediation before, and as a condition precedent to, the initiation of any adjudicative action or proceeding, including arbitration, and any suit, action or arbitration shall be barred unless mediation has been attempted in good faith....
>
> Should mediation be unsuccessful, it is agreed that the Dispute shall be submitted to binding, non-appealable arbitration and that such arbitration shall be governed by the Uniform Arbitration Act, 710 ILSC 5/1 [sic].

JEI contends that this provision is rendered illusory because the Agent Agreement contains certain exceptions to the mandatory mediation/arbitration provision. The exceptions clause, in pertinent part, provides:

> Notwithstanding any other provision of this Agreement, DBP may enforce Agent's compliance with any restrictive covenant, policy replacement prohibition, confidentiality provision or trade secret provision contained in this Agreement to the fullest extent permitted by law by seeking any remedy available at law or in equity, including but not limited to obtaining a temporary restraining order or injunction, without having to mediate and/or arbitrate, and without need to post a bond to do so.

JEI argues that the exceptions clause, in essence, gives DBP the unilateral right to a judicial forum for all of DBP's claims. This one-sidedness, JEI contends, makes the mandatory mediation/arbitration provision fail for lack of mutuality.

JEI principally relies upon *Hill–Harriss v. Gingiss Int'l, Inc.*, No. 91 C 6682, 1992 WL 22705 (N.D.Ill. Feb. 5, 1992) (Kocoras, J.) (*"Hill–Harriss I"*). *Hill–Harriss I* involved provisions which JEI claims are "strikingly similar" to the provisions at issue in this case. *Hill–Harriss I* held that the exceptions to the arbitration clause entitled Gingiss, the party seeking to compel arbitration, to judicially enforce virtually every imaginable cause of action that could arise between the parties. *Id.* at *3. The court found that because Hill–Harriss received no promise from Gingiss to arbitrate any claims in exchange for its promise to arbitrate all claims, the mandatory arbitration clause was unenforceable. *Id.*

As noted earlier, *Hill–Harriss I* was vacated in part by Judge Kocoras on a motion to reconsider. *See Hill–Harriss v. Gingiss Int'l, Inc.*, No. 91 C 6682, 1992 WL 57952 (N.D.Ill. Mar. 20, 1992) (*"Hill–Harriss II"*). On reconsideration, Judge Kocoras found that a number of contractual provisions not previously submitted established that Gingiss was obligated to arbitrate at least some claims. *Id.* at *4. Based on this finding, Judge Kocoras concluded that the mandatory arbitration clause at issue did not fail for lack of mutuality, as Gingiss' obligation to arbitrate at least some claims represented valid consideration for Hill–Harriss' promise to arbitrate. *Id.*

During a status hearing in this case, JEI noted that it could distinguish the facts of *Hill–Harriss II* from this case. Although this court's denial of JEI's motion to file a supplemental brief prevented JEI from providing its basis for distinguishing *Hill–Harriss II*, the court does not believe that JEI could benefit from either decision, notwith-

standing any factual differences. The decisions in both *Hill–Harriss I* and *Hill–Harriss II* were premised on the principle that "consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate at least some specified class of claims," *see Hill–Harriss II,* 1992 WL 57952 at *4, a principle which was derived from the Eleventh Circuit's decision in *Hull v. Norcom, Inc.,* 750 F.2d 1547, 1550 (11th Cir.1985). Although the Eleventh Circuit construed New York law in *Hull,* at least one other court in this district has followed the principle set out in *Hull* in applying Illinois law. *See Lopez v. Plaza Fin. Co.,* No. 95 C 7567, 1996 WL 210073, at *5 (N.D.Ill. Apr. 25, 1996). In addition, at least two courts, including one Illinois appellate court, have noted the principle set forth in *Hull* in applying Illinois law. *See, e.g., Jacob v. C & M Video, Inc.,* 248 Ill.App.3d 654, 188 Ill.Dec. 697, 701, 618 N.E.2d 1267, 1271 (1993) (distinguishing *Hull*); *Seymour v. Gloria Jean's Coffee Bean Franchising Corp.,* 732 F.Supp. 988, 995–96 (D.Minn.1990) (distinguishing *Hull*).

This court is unable to reconcile *Hull* with current New York law, and for that matter, Illinois law as well. In *Sablosky v. Edward S. Gordon Co., Inc.,* 73 N.Y.2d 133, 538 N.Y.S.2d 513, 535 N.E.2d 643 (1989), the Court of Appeals of New York held that an employment contract, which was supported by consideration on both sides and which contained an arbitration clause compelling one party to submit all disputes to arbitration but allowing the other party the choice of pursuing arbitration or litigation, was not invalid for lack of mutuality of remedy or obligation. *Id.* at 515–17, 535 N.E.2d at 645–47. *Sablosky* implicitly followed the Restatement (Second) of Contracts, which rejects both the doctrine of mutuality of obligation, *see* section 79, and the doctrine of mutuality of remedy, *see* section 363, cmt. c. Thus, as far as New York law is concerned, *Hull* is no longer good law.

■ Like New York, Illinois follows the Restatement (Second) of Contracts on this issue. Mutuality of obligation is required only "to the extent that both parties to an agreement are bound or neither is bound;" that is, "[i]f the requirement of consideration has been met, mutuality of obligation is not essential." *S.J. Groves & Sons Co. v. State of Illinois,* 93 Ill.2d 397, 67 Ill.Dec. 92, 95, 444 N.E.2d 131, 134 (1983) (citing Restatement (Second) of Contracts § 79 (1981) (internal quotations and other citations omitted)), *appeal dismissed sub nom. S.J. Groves & Sons Co. v. Illinois, Dept. of Transp.,* 462 U.S. 1126, 103 S.Ct. 3103, 77 L.Ed.2d 1359 (1983), *overruled on different grounds by Rossetti Contracting Co. v. Court of Claims,* 109 Ill.2d 72, 92 Ill.Dec. 521, 524, 485 N.E.2d 332, 335 (1985). Although *S.J. Groves* did not involve the validity of an arbitration clause, this court discerns no reason why it should apply a different mutuality rule in arbitration cases, as most courts treat arbitration agreements the same as any other contract. *See Doctor's Assocs.,* 66 F.3d at 452 (collecting cases). Thus, this court is of the opinion that the Illinois Supreme Court, if presented with the issue, would not find an arbitration clause, which compels one party to submit all disputes to arbitration but allows the other party the choice of pursuing arbitration or litigation, to be invalid for lack of mutuality of obligation or remedy where the contract as a whole is otherwise supported by consideration on both sides.[5] JEI

---

5. To the extent the other decisions in this district, *Lopez, Hill–Harriss I* and *Hill–Harriss II,* arrive at a different conclusion, this court disagrees with those cases. *Lopez,* however, is distinguishable in some respects as that case involved the validity of an arbitration agreement, not just an arbitration clause contained in an otherwise valid contract. *See Lopez,* 1996 WL 210073, at *4. The court also distinguishes two Illinois appellate decisions cited by *Lopez, C & M Video* and *Fireman's Fund Ins. Co. v. Bugailiskis,* 278 Ill.App.3d 19, 214 Ill.Dec. 989, 662 N.E.2d 555, *appeal denied,* 167 Ill.2d 552, 217 Ill.Dec. 664, 667 N.E.2d 1057 (1996), from the case at bar. *C &*

*M Video* did not directly confront *Hull,* as the arbitration clause at issue in that case required the parties to submit at least some disputes to arbitration. *C & M Video,* 188 Ill.Dec. at 701, 618 N.E.2d at 1271. Because *C & M Video* distinguished *Hull* without commenting on its merits, the court cannot draw any conclusion from that case. In *Bugailiskis,* the court declared an arbitration clause, which bound the insured in all circumstances but did not bind the insurance company if the award exceeded the minimum liability amount, to be void on public policy grounds. No similar arbitration clause is

does not contend that the Agent Agreement was unsupported by consideration. Nor could it likely do so, especially in light of the broad definition of consideration. *See* Restatement (Second) of Contracts §§ 71 and 72 (1981). Hence, whether or not the exceptions clause in the Agent Agreement can be read to permit DBP to seek judicial relief in lieu of mediation and arbitration would make no difference in this case, as Illinois law would not make the mandatory mediation/arbitration clause invalid for lack of mutuality.

■ Even if JEI could avail itself to the rule found in *Hull*, the Agent Agreement in this case does not permit DBP to unilaterally litigate any and all claims as JEI so contends. In support of its contention, JEI relies upon the interplay between the Agent Agreement and the Agent Promissory Note, executed at the same time as the Agent Agreement. Specifically, JEI contends that a portion of the exceptions clause, when read in conjunction with the Agent Promissory Note, permits DBP to avoid arbitration for any claim for money damages. The relevant portion of the exceptions clause provides:

> In addition, nothing contained in this Agreement shall in any manner limit DBP's rights to recover through legal process all amounts due under the Agent Note and enforce all remedies available under the Pledge Agreement without the necessity of mediation or arbitration.

The Agent Promissory Note, in pertinent part, provides:

> For value received, [JEI] promises to pay to the order of [DBP], the aggregate of *all sums* from time to time advanced by DBP to [JEI] or for the benefit of [JEI] as reflected in all of [JEI's] accounts (collectively, "Account") on the books of DBP, *or otherwise owed* by [JEI] to DBP.... [emphasis added]

JEI argues that sums "otherwise owed" could include any claim for damages arising from a breach of the Agent Agreement and that the exceptions clause operates to exclude such claims from the mandatory mediation/arbitration clause. Construing "all sums

... otherwise owed" to encompass any unliquidated claim for damages simply is not a reasonable interpretation of the Agent Promissory Note. Without question, DBP is required to submit to mediation and arbitration a number of claims, including any dispute over the amount of commissions due, the termination of Agent Agreement, the interpretation of the Agent Agreement and any breach of an obligation or duty not specifically enumerated in the exceptions clause. Thus, JEI could not prevail on its lack of mutuality defense even if it was available.

Having concluded that JEI's counterclaim is subject to a valid, mandatory mediation/arbitration clause, the court grants DBP's motion to compel mediation/arbitration of JEI's counterclaim and stay proceedings on the counterclaim pursuant to sections 4 and 3 of the FAA, respectively. Although DBP also seeks a stay with respect to the claims asserted in the first amended complaint, the court denies such request at this time, as those claims appear to be separable from the counterclaim. As to the mediation/arbitration of the claims asserted in the first amended complaint, this matter has been raised at the last two status hearings, during which counsel for the parties stated that the parties may agree to submit these claims to mediation/arbitration as well. The court, therefore, orders counsel for all parties to appear for a status on this matter.

**B. Motion to deposit funds into court**

■ DBP requests that it be allowed to deposit into the court commissions that would otherwise be due under the Agent Agreement, but for defendants' alleged violation of the agreement. Defendants oppose DBP's motion. It is not clear how much money DBP seeks to deposit, nor is it clear whether there would be one single deposit or an ongoing series of deposits. If the estimation in JEI's counterclaim is accurate, these commissions could exceed the sum of four million dollars.

■ Although DBP does not provide the procedural basis for such motion, the court assumes it is proceeding under Rule 67 of the

at issue here; thus, *Bugailiskis* is factually distinguishable.

Federal Rules of Civil Procedure. Rule 67 provides for the depositing of funds in the court upon giving notice to every other party and by leave of court. The decision of whether to grant such leave is a matter within the discretion of the court. *Garrick v. Weaver*, 888 F.2d 687, 694 (10th Cir.1989). It is not clear why DBP seeks to deposit the funds. Certainly, whether or not DBP is permitted to deposit funds will not affect its involvement in this litigation, as it will not be excused from the litigation once it deposits the funds. Thus, DBP would not suffer any prejudice in this respect should the court deny the motion. Of greater concern to the court is the possibility that this could involve a substantial sum of money and could entail an ongoing series of deposits, both of which would impose an unnecessary burden upon the clerk of the court. In light of these unaddressed concerns, the court denies the motion to deposit funds at this time. Should DBP seek reconsideration of this denial, it should raise such matter at the status hearing scheduled herein.

## CONCLUSION

For the foregoing reasons, DBP's motion to compel mediation/arbitration and stay proceedings is granted with respect to JEI's counterclaim. DBP and JEI are ordered to submit JEI's counterclaim to mediation and arbitration in accordance with the provisions of the Agent Agreement. All matters concerning JEI's counterclaim shall be stayed pending resolution of that matter. DBP's motion to deposit funds into court is denied. Counsel for the parties are ordered to appear for a status on October 4, 1996 at 9:00 a.m., at which time the court shall take up the matter concerning the arbitration of DBP's claims and a stay of the entire proceedings.