JULIE REED, Plaintiff-Appellant, v. FARMERS INSURANCE GROUP, Defendant-Appellee.

Third District No. 3—96—0739

Opinion filed September 10, 1997.

Donald K. Birner (argued), of Thomas & Birner, of Pekin, for appellant.

Dan Worker (argued) and Julie A. Hoffman, both of Worker & Power, of Chicago, for appellee.

JUSTICE SLATER delivered the opinion of the court:

The plaintiff, Julie Reed, filed a two-count complaint against defendant, Farmers Insurance Group. The first count sought to have a

clause in her insurance policy issued by defendant declared void as against public policy and section 143a of the Insurance Code mandating the presence of such clause in her policy declared unconstitutional. 215 ILCS 5/143a (West 1996). In the second count of her complaint, plaintiff sought to recover damages for injuries allegedly suffered as a result of the negligent driving of an uninsured motorist. Defendant moved to dismiss both counts. The trial court granted defendant's motion, finding that there was no constitutional impediment to enforcing the statute and that the action was not ripe for declaratory judgment. The plaintiff appeals.

■ As a threshold matter, we are obliged to determine whether plaintiff's declaratory judgment action was ripe for adjudication. Section 2—701(a) of the Code of Civil Procedure states, in pertinent part, that a trial court

> "may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute *** and a declaration of the rights of the parties interested." 735 ILCS 5/2—701(a) (West 1996).

In order to be sufficient, a claim for declaratory judgment must recite in detail an actual and legal controversy between the parties and must demonstrate that the plaintiff is interested in the controversy. *First of America Bank, Rockford N.A. v. Netsch*, 166 Ill. 2d 165, 651 N.E.2d 1105 (1995). The term "actual controversy" is defined as a legitimate dispute admitting of an immediate and definite determination of the parties' rights, the resolution of which would aid in the termination of all or part of the dispute. *Kerr Steamship Co. v. Chicago Title & Trust Co.*, 120 Ill. App. 3d 998, 458 N.E.2d 1009 (1983).

The purpose behind the declaratory judgment procedure is to determine and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right. *Netsch*, 166 Ill. 2d 165, 651 N.E.2d 1105. In order to effectuate this purpose, the declaratory judgment statute has been liberally construed and should not be restricted by unnecessarily technical interpretations. *Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill. 2d 443, 389 N.E.2d 529 (1979).

■ Guided by the above principles, we find that plaintiff's complaint represents an actual controversy regarding the validity of her policy's arbitration clause, as well as the constitutionality of section 143a of the Insurance Code. The plaintiff has alleged that the arbitration clause in her policy and the statute requiring its presence therein

are unfairly structured to favor the insurer by allowing the insurer to unilaterally reject a high arbitration award while binding an insured in the event of a low award. Plaintiff contends that the enforcement of the clause and statute in her case could act to unfairly bind her to a low arbitration award while requiring her to proceed to litigation in the event of a high award. In view of *Calabrese v. State Farm Mutual Automobile Insurance Co.*, 187 Ill. App. 3d 349, 543 N.E.2d 215 (1989), which held that where a plaintiff submitted his claim to arbitration as required by the policy his rights to challenge the constitutionality of compulsory arbitration were waived, it is clear that her suit must have been brought prior to the submission of any claim to arbitration in order to avoid a potentially irrevocable change in her position. As it was this very situation the statute was designed to address, we conclude that plaintiff's claim was ripe for declaratory judgment.

■ Having determined that plaintiff's claim was ripe, we now address her substantive arguments. Plaintiff first contends that the clause in her policy requiring her to submit her claim for uninsured motorist benefits to arbitration that is binding only if it does not exceed minimum financial liability limits, but is subject to trial *de novo* should the award exceed those limits, is unconscionable and unenforceable. Specifically, plaintiff contends that the arbitration clause was unfairly structured to favor the insurer, allowing the insurer to bind the insured to a low award and permitting the insurer to unilaterally reject a high award.

The insurance policy in question provides, in pertinent part:

"If an **insured person** and we do not agree (1) whether the person is legally entitled to recover damages from the owner or operator of an **uninsured motor vehicle,** or (2) as to the amount of payment under this part, either that person or we may demand, in writing, that the issue be determined by arbitration. The amount of the award will be binding unless the amount of the award for **damages** exceeds the minimum required limits set forth in the Illinois Financial Responsibility Law. \*\*\* When we arbitrate, any decision made by any two of the arbitrators in writing shall be binding for the amount of **damages** not exceeding the minimum required limits for **bodily injury** set forth in the Illinois Financial Responsibility Law and may be entered as a judgment in a proper court. When an award exceeds those limits, either party has a right to reject the award and to a trial on all issues in a court of competent jurisdiction. This right must be exercised within sixty (60) days of the award by filing suit in a court of competent jurisdiction. In that event, costs, including attorney fees, are to be paid by the party incurring them." (Emphasis in original).

Pointing to our decision in *Herriford v. Boyles*, 193 Ill. App. 3d 947, 550 N.E.2d 654 (1990), defendant contends that arbitration clauses like the one in question have been enforced in Illinois. We note, however, that it was neither argued nor ruled upon in *Herriford* whether an arbitration clause was structurally unfair when it provided that only awards of $20,000 and lower were binding, while awards in excess of that amount were subject to trial *de novo*. Furthermore, since the plaintiffs in *Herriford* did not challenge the mandatory arbitration of their dispute with the insurance company, the court did not address the compulsory aspect of mandated, binding arbitration. For these reasons, we are not constrained by the holding in this case.

Our research has revealed only one Illinois case squarely addressing the validity of the so-called "escape hatch" provision allowing trial *de novo* in cases of awards in excess of the financial responsibility limits of the Illinois Vehicle Code. In *Fireman's Fund Insurance Cos. v. Bugailiskis*, 278 Ill. App. 3d 19, 662 N.E.2d 555 (1996), the court determined that, in the underinsured motorist coverage context, the trial *de novo* clause violated public policy and was unenforceable. While specifically acknowledging the holding in *Mayflower Insurance Co. v. Mahan*, 180 Ill. App. 3d 213, 535 N.E.2d 924 (1988), that nonbinding arbitration is not in itself violative of public policy, the court in *Bugailiskis* concluded that given the increased delay and cost associated with nonbinding arbitration, the unequal application of the escape clause, and the fact that the contract possessed many of the earmarks of a contract of adhesion, the trial *de novo* clause was violative of public policy. *Bugailiskis*, 278 Ill. App. 3d 19, 662 N.E.2d 555.

Defendant urges us not to follow the reasoning of *Bugailiskis* on the grounds that it is inapposite to uninsured motorist coverage, is based on the faulty premise that the facially neutral arbitration clause in practice favors the insurer, and granted relief contrary to that requested by plaintiff in the instant case. In addition, defendant points to other jurisdictions that have enforced similar arbitration clauses and urges that they be viewed as persuasive authority. See *Roe v. Amica Mutual Insurance*, 533 So. 2d 279 (Fla. 1988); *Cohen v. Allstate Insurance Co.*, 231 N.J. Super. 97, 555 A.2d 21 (1989).

In its attempt to distinguish *Bugailiskis*, defendant notes that *Bugailiskis* involved an underinsured motorist claim rather than an uninsured motorist claim and, by its own acknowledgement, its reasoning was inapplicable to the latter context. Defendant contends that the policy concerns in each context are significantly different and compel different results. We acknowledge that the purpose of the

uninsured motorist statute is to place the insured policyholder in substantially the same position he or she would have occupied had the uninsured driver been minimally insured. *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148, 656 N.E.2d 1058 (1995). Underinsured coverage, on the other hand, serves to place the insured in the position she would have occupied had the minimally insured driver maintained coverage equal to that of her own. *Bugailiskis*, 278 Ill. App. 3d 19, 662 N.E.2d 555. That such a difference in underlying policy should lead to a different result in the uninsured context was specifically acknowledged in *Bugailiskis*.

With regard to *Bugailiskis'* acknowledgement that such "escape hatch" language would be less oppressive in the uninsured motorist claim context, the court did not address the compulsory nature of the arbitration of claims for uninsured motorist benefits. We find this to be an oversight of great significance. While in the context of voluntary arbitration the "escape hatch" provision may perhaps be less oppressive to the insured in an uninsured motorist case, we cannot agree that the same is true when compulsory arbitration is mandated by statute.

The involuntary nature of the arbitration clause coupled with its structural inequality render it unconscionable and unenforceable. The *Bugailiskis* court noted that although an insurance policy may not technically qualify as a contract of adhesion, it possesses some of the earmarks of an adhesive contract. Here, the mandatory arbitration clause in plaintiff's insurance policy can only be characterized as adhesive. It is common knowledge that insurance coverage is mandatory in Illinois. Further, section 143a of the Insurance Code, as it is currently written, requires that all disputes regarding liability and damages be submitted to arbitration. Plaintiff correctly states that she was required by the legislature to purchase a policy of insurance that included this mandatory arbitration clause. Plaintiff had no means or opportunity to negotiate the arbitration clause and was unable to obtain insurance without agreeing to the mandatory arbitration provision. It is this involuntary submission to binding arbitration that we find offensive.

With respect to defendant's next contention, that there is no basis for the determination that the instant, facially neutral arbitration clause in practice is unfair to the insured, we find defendant's argument unpersuasive. Our research reveals that the court in *Bugailiskis* relied heavily on authority from other states, specifically: Connecticut, Delaware, Minnesota, New York and Vermont. In these jurisdictions, courts have held that arbitration clauses similar to that in the present case were void as against public policy because al-

though ostensibly neutral in that they allow either party to demand a trial if the award exceeds the minimum liability amount, application of the "escape hatch" language of the clauses unfairly and unequivocally favors the insurer over the insured. In effect, the language allows the insurer to avoid a high award while binding the insured to a low award. See *O'Neill v. Berkshire Mutual Insurance Co.*, 786 F. Supp. 397 (D. Vt. 1992); *Mendes v. Automobile Insurance Co.*, 212 Conn. 652, 563 A.2d 695 (1989); *Worldwide Insurance Group v. Klopp*, 603 A.2d 788 (Del. 1992); *Schmidt v. Midwest Family Mutual Insurance Co.*, 426 N.W.2d 870 (Minn. 1988). In *Klopp*, the court reasoned:

> "Under the present policy language both parties are bound by a low award which an insurance company is unlikely to appeal. While high awards may be appealed by either party, common experience suggests that it is unlikely that an insured would appeal such an award." *Klopp*, 603 A.2d at 791.

Although defendant correctly points out that courts are split on the validity of arbitration clauses with "escape hatch" provisions, we find the authority cited by defendant to be unpersuasive. See *Chmielewski v. Aetna Casualty & Surety Co.*, 218 Conn. 646, 591 A.2d 101 (1991); *Roe*, 533 So. 2d 279; *Cohen*, 231 N.J. Super. 97, 555 A.2d 21. All three cases offered by the defendant are readily distinguishable. With regard to *Chmielewski*, this case simply did not involve an arbitration clause limiting the right to appeal only to awards exceeding a certain amount. Further, in *Roe*, the court based its conclusion that a similarly structured arbitration clause was in conflict with neither statute nor public policy largely upon the fact that the parties agreed to its structure, an option allowed under Florida law in lieu of binding arbitration. Similarly, the court in *Cohen* noted that the duty to arbitrate, as well as the scope of arbitration, are solely dependent on the parties' agreement. The *Cohen* court specifically indicated that arbitration was not statutorily required in uninsured coverage cases. Therefore, the court concluded that the policy ascertainable therefrom was to encourage arbitration, while preserving the full flexibility of the parties to choose whether to arbitrate and the manner in which arbitration, if chosen, is structured and limited. Clearly, the support of freedom of contract that informed the decisions in *Roe* and *Cohen* is absent in our case involving a duty and scope of arbitration mandated by statute.

Instead, like the court in *Bugailiskis*, we are persuaded that while the right to appeal in the event of a high award is available to both parties, it is nonetheless very unlikely that the insured would reject the high award, while the insured would in any event be bound

in the case of a low award. Unlike the *Bugailiskis* court, however, we decline to find the mandatory arbitration clause with the "escape hatch" provision void as against public policy. Rather, we find that the clause's structural inequality coupled with its mandatory presence in the policy render it particularly oppressive and unconscionable and, consequently, unenforceable.

With regard to defendant's contention that following the reasoning of *Bugailiskis* mandates a remedy contrary to that requested by the plaintiff, we agree. Therefore, because we find the policy language at issue to be unambiguous, we decline to follow *Bugailiskis'* interpretation of similar language as calling for binding arbitration. Instead, as the instant arbitration clause clearly provides for binding arbitration of awards up to statutory financial liability limits, and nonbinding arbitration of awards exceeding those limits—a structure we have found to be unconscionable—we are constrained to find the entire arbitration clause to be unenforceable.

■ We next address plaintiff's claim that section 143a of the Insurance Code is unconstitutional because it impairs her right to contract. Section 143a of the Insurance Code states that an arbitration clause providing for the mandatory submission of all claims for uninsured motorist benefits be placed in every automobile policy issued for delivery, delivered or renewed in Illinois. The section further dictates that the arbitration clause be structured to provide for binding arbitration of awards up to the financial liability limits of the Illinois Vehicle Code while awards in excess of those limits be subject to trial *de novo*.

■ It is well settled that legislative enactments carry a strong presumption of constitutionality (*People v. Lindner*, 127 Ill. 2d 174, 535 N.E.2d 829 (1989)) and that a party attacking a law bears the burden of showing that it is unreasonable (*Messenger v. Edgar*, 157 Ill. 2d 162, 623 N.E.2d 310 (1993)). Where a statute in question does not affect a fundamental constitutional right, the appropriate standard of review for determining whether a contract has been unconstitutionally impaired is the rational basis test. *Royal Liquor Mart, Inc. v. City of Rockford*, 133 Ill. App. 3d 868, 479 N.E.2d 485 (1985). The first question to be asked is whether the statute in question has operated as a substantial impairment of a contractual relationship. *Royal*, 133 Ill. App. 3d 868, 479 N.E.2d 485. If such impairment is found, the proper inquiry is whether the legislative enactment represents a significant and legitimate public purpose and whether the means are reasonably tailored to promote that purpose. *Royal*, 133 Ill. App. 3d 868, 479 N.E.2d 485.

■ Plaintiff has proven that the statute in question substantially

impaired her right to contract. Section 143a mandates that all disputes be submitted to arbitration, that awards not exceeding the minimum financial responsibility limits are binding, which in effect limits plaintiff's right to appeal determinations of no liability and low awards, and that insurance policies must contain the compulsory arbitration clause. Plaintiff was compelled to contract for automobile insurance coverage pursuant to the mandatory coverage laws in the state, and section 143a substantially impaired her right to bargain. Having found that plaintiff's right to contract was substantially impaired, we next ask whether section 143a represents a proper public purpose and whether the means are reasonably tailored to promote that purpose. *Royal*, 133 Ill. App. 3d 868, 479 N.E.2d 485.

In enacting section 143a, the legislature intended to place the policyholder injured by an uninsured motorist in the same position she would have occupied had the uninsured motorist been minimally insured. *Luechtefeld*, 167 Ill. 2d 148, 656 N.E.2d 1058. In attempting to reach this goal, however, the legislature unambiguously imposed upon the insured an arbitration clause that binds her in the event of no award or a low award but subjects a high award to trial *de novo*. Due to the structure of the arbitration clause mandated by section 143a, the section stands in opposition to the public policy favoring arbitration as a means of reducing litigation expressed by the court in *Mayflower*, 180 Ill. App. 3d 213, 535 N.E.2d 924. Rather than improving efficiency and decreasing expense, in cases of awards exceeding the minimum financial liability limits, arbitration as mandated by section 143a may simply become a stop on the way to litigation. Furthermore, compulsory arbitration takes away the full flexibility of the parties to choose whether to arbitrate and the way arbitration is structured, and detracts from the stated purpose of the statute. Finally, if the purported purpose of the statute is to put the insured in substantially the same position she would have occupied had the uninsured motorist been minimally insured, then why "punish" the insured by mandating binding arbitration and taking away the insured's right to appeal in cases of no liability or awards below the minimum financial responsibility limits?

We conclude that the means adopted by the legislature are not rationally related to the accomplishment of this goal. We find that the plaintiff has sustained her burden of establishing the invalidity of section 143a. Having found section 143a to be violative of the right to contract, we decline to address plaintiff's other constitutional claims.

For the reasons stated, we reverse the judgment of the circuit

court dismissing plaintiff's action and remand for further proceedings consistent with this decision.

Reversed and remanded.

HOMER and MICHELA, JJ., concur.